YVONNE T. RODRIGUEZ, Justice
This case involves the adjudication and disposition of a juvenile delinquent. In its petition, the State alleged P.M., a juvenile, had committed the offenses of indecency with a child and aggravated sexual assault of a child. TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (West Supp. 2017)(indecency with a child), § 22.021(a)(1)(B)(ii)(West Supp. 2017)(aggravated sexual assault of a child). Upon trial of the case, the jury found the juvenile had engaged in the delinquent conduct of aggravated sexual assault of a child and indecency with a child by exposure. The trial court entered an order of adjudication and a judgment of probation.
In three issues, the juvenile challenges the sufficiency of the evidence to support the jury's finding of delinquency, asserts the trial court's evidentiary ruling regarding hearsay testimony was erroneous, and complains that his right of confrontation was abridged by the admission of improper hearsay testimony. Finding a violation of the juvenile's Sixth Amendment right to confrontation, we do not reach the juvenile's first two issues. We reverse and remand for a new trial.
BACKGROUND
P.M. (the juvenile) and F.H. (the child) are half-brothers through their biological mother, T.H. M.H. is the father of the child, who was six-years old at the time of the adjudication hearing in October 2014, and five-years old at the time the alleged offenses occurred in October 2013. The juvenile was fifteen at the time of the alleged offense, and sixteen at the time of trial. M.H. considered himself a father to the juvenile. In October 2013, T.H., M.H., the child, and the juvenile lived together in a two-bedroom apartment. The boys slept together in a single bed, and showered together on Sundays.
During the adjudication hearing, M.H. testified that on October 29, 2013, while returning home from buying cupcakes for school, the child informed his father, M.H., that he liked grapes. M.H. informed the child that he should have told him that he liked grapes, and he could have bought some. M.H. then asked his son whether he liked oranges, and M.H., replied, "No, because they taste like sex." When M.H. asked the child who discusses sex with him, the child replied, "[P.M.]" The child informed his father that the discussions occurred in the shower, then mentioned "wee-wee," and said that while in the shower "his wee-wees would go in [my] mouth[.]" The boys had last showered together on October 27, 2013.
After arriving home, and in T.H.'s presence, M.H. picked up the child, and asked, "[W]ho does pee-pees in your face?" to which the child answered, "[P.M.]" When M.H. asked where and how often this had occurred, the child responded, "A lot," and "In my hair, in my face and in my body." M.H. informed the juvenile that he should sleep with his mother that evening. After futile attempts to discuss the matter with T.H., M.H. called police out of concern for his son's safety.
Under cross-examination, M.H. acknowledged that he had informed police that evening that he and his wife had not spoken in several days due to marital difficulties. He agreed that pee-pee and wee-wee were different terms, and when asked whether F.M. said that the juvenile had "put his wee-wee in the mouth or was it pee-pee[,]" H.M. acknowledged that F.M. had stated that the juvenile had put his pee-pee in F.M.'s mouth, on his face, and all over his body while the boys showered together. M.H. did not discuss these matters with the child after October 29, 2013, *369 nor did the child inform M.H. between that date and the adjudication hearing that these events did not happen. M.H. recalled informing a domestic relations social worker, Gwendolyn McClure, that he was concerned because of the time that had passed since the incident and noted that F.M. was changing his story, but M.H. testified that the child had not stated that the events did not occur. When asked on cross-examination whether the child had changed his story, H.M. replied, "No, I changed the story, he didn't." H.M. denied that he had ever told the child to make allegations of sexual abuse.
Under re-direct examination, and in relation to his comments to Gwendolyn McClure, M.H. was asked whether the child was saying the alleged acts had not occurred or was just saying he did not remember. M.H. clarified that the child had stated that he did not want to remember. When asked what the child had said since the allegations had been reported to police, M.H., replied, "The similar story, sir, to myself and to our counselor, Mary Beaver[.]"
Detective Patrick Barett of the El Paso County Sheriff's Office investigated the child's allegations and identified the juvenile as the suspect. He explained that although DNA or trace evidence is sometimes procured, when the exact date of incident is unknown, such evidence is not always obtained because the examinations for securing the evidence are very intrusive and traumatic for the victim, and because force may be used to conduct the exam, a parent's release of liability must be obtained. A forensic sexual assault examination for the purpose of attempting to recover biological evidence such as sperm and saliva may be conducted within four days of an occurrence. In this case, no photographs, DNA, or medical evidence was obtained because the date of the last incident was unclear. The juvenile informed Detective Barett that nothing had happened, and stated that he and his brother had not showered in a long time.
As part of the investigation, Detective Barett observed and heard Joe Zimmerly conduct a forensic interview with the child at the advocacy center. Detective Barett's purpose in witnessing forensic interviews is to determine whether a child provides information sufficient to constitute probable cause or acts that meet the elements of an offense based on what the child says and describes. He noted that children sometimes use language that is not age-appropriate, which may indicate their comments have been directed or coached. M.H. and T.H. were present at the advocacy center during the interview, and as the interview was concluding, Detective Barett heard a commotion and a female voice screaming. As Detective Barett exited, T.H. approached and began yelling at him, and informed him that she knew her rights and could take her child out of the interview. He spoke with T.H. in another room. When he asked T.H. whether she would like to give a statement, T.H. declined. Upon conclusion of the child's forensic interview, Detective Barett determined that the child had knowledge of events and that sufficient probable cause existed to proceed with the case.
Joe Max Zimmerly is a neutral fact finder at the advocacy center, and is unaffiliated with law enforcement or child protective services. As a forensic interviewer, Zimmerly's function is to attempt to have the child explain what has occurred through the use of non-leading and non-threatening questions, with no expected result. A few minutes prior to an interview, Zimmerly receives basic facts about the child and the case, such as how the outcry occurred, family relationships, and any *370 special needs the child may have. A rainbow on a wall is used as a color reference.
Over objection, Zimmerly testified that during his interview of the child, the child had stated that while in the shower, the juvenile would pee on his face a lot of times, that the pee would get in his mouth and tasted oily and that he would make the "pee" come out. Using an anatomical doll, the child demonstrated to Zimmerly how the juvenile would hit his penis in a spanking or slapping manner and in a thrusting motion, and described the "pee" that would come out on the wall as sticky. The child stated his own pee was like green water, but showed how the juvenile would breathe differently, and although initially describing the color of the sticky "pee" as dark green, the child later pointed to a beige-colored lamp shade in the interview room as reflective of the color of the juvenile's pee. The child also said that the juvenile put the juvenile's "wee-wee" or penis in the child's mouth "a lot of times," and after Zimmerly clarified that "wee-wee" was the child's description of the penis, and the "pee" is what comes out of the "wee-wee," the child stated that the juvenile would put his wee-wee on the child's forehead, his eye, on his nose, the belly button, and in his mouth. Zimmerly described how the child put the doll on his forehead and on his mouth. When Zimmerly asked, "Did it go on your mouth or in your mouth?" the child replied, "In my mouth." When asked on several occasions whether he had seen the juvenile's pee-pee or somebody's "wee-wee," the child said, "No." The child described the juvenile's wee-wee as being "a little straight" when he peed on him. Zimmerly then asked the child whether each of the incidents had occurred "[o]ne time, two times, [or] a lot of times." Zimmerly believed the child had responded one or two times regarding his forehead and eyes, "but a lot of times in the mouth."
Zimmerly agreed that during the interview, the child answered a qualifying question incorrectly, but noted that the child had not lied when he was asked a question about a "kitty cat" and a fish and pointed to the wrong animal, and answered the next qualification question correctly. He also agreed that the child originally stated that his brother had not touched him, and when the child used the anatomical dolls, Zimmerly did not recall whether the child actually articulated that his brother "put his wee-wee in my mouth." Zimmerly sought clarification from the child by following up on statements the child made by asking about the frequency of the events. While the child was drawing, Zimmerly left the room to speak with agency personnel situated behind a glass to determine whether anything needed to be clarified, and although uncertain, initially stated that he believed comments regarding oral penetration had occurred after this time, but then stated that he believed that the child had used the word "wee-wee" prior to being asked to draw and in advance of Zimmerly's break. Zimmerly asked the child to describe his drawing, and Zimmerly wrote his notes on the drawing. In addition to labeling the top and bottom of the drawing, Zimmerly also noted the child's comments, "Water comes out," and "He always pees in my face."
The child had initially demonstrated his brother flicking him, but also described or demonstrated the juvenile striking the juvenile's penis. When asked if someone had ever touched him, the child stated, "boys and girls are touching me." Zimmerly testified that he had no information regarding whether the child had recanted before trial.
When the State sought to introduce the video recording of the child's interview, the trial court heard arguments in the jury's *371 absence, and although defense counsel objected on the basis that the recording should not be admitted under Code of Criminal Procedure article 38.071 because the child was available to testify in the jury's presence, the State argued that during opening statements, the defense opened the door to permit the video recording to be admitted under the optional completeness exception to the hearsay rule. See TEX. R. EVID. 107 ; TEX. CODE CRIM. PROC. ANN. art. 38.071, § 1(5), (8), § 2(a) (West Supp. 2017). Noting that the child was available to testify, the trial court sustained the objection. After the State rested its case, the trial court denied the juvenile's motion for directed verdict.
The child testified as a defense witness. During his testimony, the child verbally answered some questions posed to him, however many of his answers were non-verbal. During examination, defense counsel, and sometimes the State's attorney would often follow the child's non-verbal response by stating "Yes" or "No." Because of the nature of the questions and the form of answers presented in the record, we find it necessary to set out the relevant testimony in the context of the colloquy that occurred between the child and counsel:
[DEFENSE]: Okay. I'm going to ask you a couple of questions. Okay? It's real simple. Do you remember talking to Greg last week?[1]
[F.H.]: (No verbal response.)
[DEFENSE]: Okay. And what day was that? Do you remember what day it was?
[F.H.]: (No verbal response.)
[DEFENSE]: No. Okay. Do you remember telling Greg that you had taken showers before in the past with your brother?
[F.H.]: (No verbal response.)
[DEFENSE]: With [P.M.]?
[F.H.]: (No verbal response.)
[DEFENSE]: Yes. Okay. And that he never did pee on you. Right? That's what you told Greg last week. Right?
[F.H.]: (No verbal response.)
[DEFENSE]: Okay. But rather that your brother peed in between you. Right?
[F.H.]: (No verbal response.)
[DEFENSE]: Is that what you told Greg?
[F.H.]: (No verbal response.)
[DEFENSE]: Yes. And that was last Thursday. Right?
[F.H.]: (No verbal response.)
[DEFENSE]: Yes. Okay. You and your brother used to take showers together. Is that correct?
[F.H.]: (No verbal response.)
[DEFENSE]: Okay. And when you took showers together, he would clean you first and then you would get out of the shower, wouldn't you?
[F.H.]: (No verbal response.)
[DEFENSE]: Yes?
[F.H.]: (No verbal response.)
[DEFENSE]: And when you would get out of the shower, would you stay in the bathroom?
[F.H.]: (No verbal response.)
[DEFENSE]: No. You would leave?
[F.H.]: (No verbal response.)
[DEFENSE]: Okay. And who would take you out of the bathroom usually, was it mommy, daddy or both?
[F.H.]: Mommy.
*372 [DEFENSE]: Okay. Did your brother ever put his pee-pee in your mouth?
[F.H.]: (No verbal response.)
[DEFENSE]: No.
Under cross-examination, the State was able to elicit more verbal responses from F.H:
[STATE]: All right. Now, [F.H.], whenever I see you do this-
[F.H.]: Uh-huh.
[STATE]: -that means yes. Right?
[F.H.]: (No verbal response.)
[STATE]: And I think these people back here, I don't know if they can quite see you so could you just say yes or no on some of those?
[F.H.]: Uh-huh.
...
[STATE]: Let me ask you a question. You see all these people in the courtroom here?
[F.H.]: (No verbal response.)
[STATE]: Do you know them?
[F.H.]: (No verbal response.)
[STATE]: Do you know some of them?
[F.H.]: (No verbal response.)
[STATE]: Okay. Could I ask you. This gentleman right here at the very end of the table, who is this young man?
[F.H.]: [P.M.].
[STATE]: [P.M.]. Who is [P.M.]? Who is he? How-how are you-are you guys related? Is he your family?
[F.H.]: (No verbal response.)
[STATE]: Is that a yes or no?
[F.H.]: Yes.
[STATE]: He's your family. And what is he in your family? Is he your mom?
[F.H.]: No.
[STATE]: No. What is he?
[F.H.]: My brother.
[STATE]: Your brother. Do you love your brother?
[F.H.]: Yes.
[STATE]: Would you do anything for your brother?
[F.H.]: (No verbal response.)
[STATE]: No. That's how I know you're brothers. Well, how about these two guys, have you ever met these two guys?
[F.H.]: No.
[STATE]: You don't know these two guys. All right. What about this lady back here, who is that nice lady?
[F.H.]: My mom.
[STATE]: She's your mom. And in the very back there, who is that guy with the shirt? Well, they all have shirts. The guy on the far left.
[F.H.]: My dad.
[STATE]: Your dad. Is your family here?
[F.H.]: (No verbal response.)
[STATE]: Okay. [F.H.], did we talk about you and your brother sometime last week?
[F.H.]: (No verbal response.)
[STATE]: We did. And when you talked with me, did you tell-did everything you tell [sic] me, was that all the truth?
[F.H.]: Yes.
[STATE]: Okay. Now, let me ask you then. So have you and [P.M.] ever taken showers together?
[F.H.]: (No verbal response.)
[STATE]: Was that a yes or a no?
[F.H.]: Yes.
[STATE]: Okay. And when you take a shower, who washes your hair?
[F.H.]: My mom.
[STATE]: Your mom washes your hair. Is she in there with you and [P.M.]?
[F.H.]: No.
*373 [STATE]: No. How about when you and [P.M.] take showers, who washes your hair?
[F.H.]: My mom.
[STATE]: Your mom.
[F.H.]: Yeah.
[STATE]: Okay. So is she in there with you and [P.M.]?
[F.H.]: (No verbal response.)
[STATE]: No. Okay.
[F.H.]: She stays outside and then me and [P.M.] is in-inside the shower.
[STATE]: Okay. So she waits in the bathroom-she's in the bathroom while both of you guys are in there?
[F.H.]: Uh-huh.
[STATE]: Okay. Who told you to say that?
[F.H.]: Nobody.
[STATE]: Nobody told you to say that? Did you talk to anybody else? When did you talk to your mom about what you were going to say? Do you remember? You don't remember?
[F.H.]: (No verbal response.)
[STATE]: Did you talk to your mom about what you were going to say?
[F.H.]: (No verbal response.)
...
[STATE]: Now, has [P.M.] ever peed in the shower?
[F.H.]: (No verbal response.)
[STATE]: He has?
[F.H.]: (No verbal response.)
[STATE]: I'm sorry. Is that a yes or a no?
[F.H.]: Yes.
[STATE]: Yes. And when he peed, what color was that pee?
[F.H.]: Gray or green.
[STATE]: So was it gray one time?
[F.H.]: (No verbal response.)
[STATE]: Now, was it green another time?
[F.H.]: (No verbal response.)
[STATE]: Okay. But was it ever gray and green at the same time?
[F.H.]: No.
[STATE]: Okay. So one time it's gray. Right?
[F.H.]: (No verbal response.)
[STATE]: And the other time it's green.
[F.H.]: (No verbal response.)
[STATE]: And this is when you were in the shower with him?
[F.H.]: (No verbal response.)
...
[STATE]: Now, whenever [P.M.] would pee in the shower, did you ever touch it?
[F.H.]: No.
[STATE]: No, you never touched it. Did it ever-did you ever-what happened when he peed, where did it go?
[F.H.]: In the middle.
[STATE]: In the middle. And then it just stayed there?
[F.H.]: (No verbal response.)
[STATE]: Then what did it do?
[F.H.]: It went into the drain.
[STATE]: Into the drain. Now, let me ask you. The gray pee-
[F.H.]: Uh-huh.
[STATE]: -and the green pee-
[F.H.]: Uh-huh.
[STATE]: -which one went to the drain faster?
[F.H.]: The green.
[STATE]: The green pee went into the drain faster. Okay. How did the gray pee go into the drain?
[F.H.]: Slow.
...
[STATE]: All right. So do you remember going to a room with a big rainbow on it and talking to a man?
*374 [F.H.]: Yes.
[STATE]: You do. And do you remember talking to him about your brother [P.M.]?
[F.H.]: Yes.
[STATE]: Okay. Do you remember telling him that [P.M.] pees on you?
[F.H.]: Yes.
[STATE]: Okay. Were you lying to the man in the rainbow room at that time?
[F.H.]: No.
[STATE]: You weren't lying to him?
[F.H.]: Uh-uh.
[STATE]: Okay. So you were telling the truth?
[F.H.]: Yeah.
[STATE]: All right. Well-all right. [F.H.], thank you for talking to me.
The following colloquy occurred when defense counsel re-examined the child:
[DEFENSE]: Okay, buddy, so what you told this jury here today, these nice 12 people over here, that was the truth. Right?
[F.H.]: (No verbal response.)
[DEFENSE]: And your brother didn't put his pee-pee in your mouth. Right?
[F.H.]: (No verbal response.)
[DEFENSE]: And when he peed, he peed in between you. Right? Is that-
[JUROR]: I'm sorry. Can he say "yes" or "no"?
...
THE COURT: Right, yeah, because he's shaking and nodding. Okay. So say "yes" or "no." If you want to start again.
[DEFENSE]: Sure.... And when he would pee, he would pee in between you. Right?
...
[DEFENSE]: Is that right?
[F.H.]: (No verbal response.)
[DEFENSE]: Because that's what you told Greg last week, your buddy here. Right?
[F.H.]: (No verbal response.)
THE COURT: Is that a yes?
[DEFENSE]: Is that a yes?
[F.H.]: Yes.
At the conclusion of the child's testimony, the State again sought, and the trial court again denied, admission of the video recording of the child's forensic interview. The juvenile then testified that he was a sixteen-year-old high school freshman, and acknowledged that he and his little brother had taken showers together at their apartment. He stated that he never did anything sexual to his brother in the shower and never peed on his brother in the shower. The juvenile explained that he and his brother would get into the shower, he would "shower [F.H.] first," take him out, and either his stepfather or his mother would take the child, and then he would take his shower. He stated that while in the shower, his penis was never erect and he never physically gratified himself.
On cross-examination, P.M. agreed that there were moments when he and the child were alone together in the shower, and that he washed the child's hair and body when their mother was not in the bathroom. He again explained that he would typically call his mother when he finished washing the child. He admitted that he had sometimes urinated in the shower in front of the child, and then stated that he would urinate away from the child. He did not recall the child saying anything about what he was doing, and sometimes the child peed in the shower also. They would change places to use the drain. When the juvenile was asked whether the child's testimony that the juvenile would turn and pee in the middle was the truth or a lie, the juvenile declared it to be a lie. The juvenile also stated that his brother's testimony *375 that P.M.'s pee was green was not true and also stated that his pee was never gray. He clarified the child's testimony that their mother waited "in the shower," and explained that she waited outside the door while the boys would shower, and sometimes their mother would bathe the child by himself, but not while the boys were showering together.
On redirect examination, the juvenile denied ever discussing sex or sexual things with his brother, and on recross-examination agreed that his relationship with his stepfather was good and that he and his brother were not having any fights or disagreements prior to the child's outcry. During rebuttal, M.H. testified that he had personal knowledge that the juvenile and the child had showered together on October 27, 2013, and the trial court judicially noticed that the date occurred on a Sunday, two days before the child made his outcry. M.H. testified that the child had never informed him that the alleged acts did not occur.
The jury deliberated, and as requested was read a portion of M.H.'s testimony. The jury then returned verdicts that the juvenile had engaged in delinquent conduct consisting of aggravated sexual assault of a child and indecency with a child. All jury members were polled and affirmed their verdicts, and the trial court entered an order of adjudication. At the conclusion of the disposition hearing, the trial court found the juvenile to be in need of rehabilitation and that the protection of the community and the juvenile required that disposition be made. The court ordered the juvenile to complete sex offender treatment, deferred imposing registration as a sex offender, and entered a judgment of intensive supervised probation until the juvenile's eighteenth birthday, imposing terms and conditions of probation.
DISCUSSION
Sixth Amendment Violation
In Issue Three, the juvenile argues the outcry witness testimony was improperly admitted in violation of the Sixth Amendment's confrontation clause because the State failed to call the child as a witness, failed to show the inherent reliability of the child's statements, and failed to show that the State's failure to call the child to testify was necessary to protect the child's welfare. The State counters that the juvenile has not properly preserved error because he failed to make a timely, contemporaneous confrontation-clause objection and he failed to obtain a ruling from the trial court as required by Rule 33.1. TEX. R. APP. P. 33.1(a). It also argues that no confrontation-clause violation occurred. The State presents no constitutional harmless-error analysis.
Preservation of Error
We first determine whether the alleged Sixth Amendment confrontation-clause error has been preserved. To preserve a complaint for appellate review, the record must show that a defendant made a timely and specific objection to the trial court in compliance with the rules of evidence or the rules of appellate procedure, that the objection was sufficiently specific to make the trial court aware of the complaint unless the specific grounds were apparent from the context, and that the trial court ruled on the objection, either expressly or implicitly, or refused to rule and the complaining party objected. TEX. R. APP. P. 33.1(a)(1)(A), (a)(2)(A-B) ; Lovill v. State , 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Failure to properly preserve error for appellate review may also waive constitutional error. See Holland v. State , 802 S.W.2d 696, 700 (Tex. Crim. App. 1991) (en banc); Briggs v. State , 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). In *376 making the objection, terms of legal art are not required, but a litigant should at least "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." Lankston v. State , 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). An objection stating one legal basis may not be used to support a different legal theory on appeal. See Heidelberg v. State , 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (objection based on Fifth Amendment did not preserve state constitutional ground). The two-fold purpose of requiring a specific objection in the trial court is: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint. Resendez v. State , 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).
We initially note that the juvenile filed a motion "pursuant to Article 38.071 (Section 6 ) of the Texas Code of Criminal Procedure and the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I Sections 10 and 19 of the Texas Constitution" that the child victim be required to testify. During the outcry hearing, and as a component of his post-testimony argument, the juvenile objected to Zimmerly's testimony, in part because "[a]llowing this statement in, [Zimmerly's] statement, would be a violation of my client's Sixth Amendment rights to confront and cross-examine witnesses on statements that they have made." Before ruling, the trial court heard the State's responsive arguments and received cases from counsel. Having heard testimony and argument, the trial court ruled that M.H. and Zimmerly were proper outcry witnesses.
After the child's father testified at the disposition hearing, and in advance of Zimmerly being called to testify, the juvenile asked that the trial court reconsider his objection to the outcry testimony of Zimmerly on the basis that "it is a violation of my client's right to confront, cross-examine witnesses that'll come in and testify against him, specifically accusers." In addition to other objections and arguments, the juvenile also argued, "We believe that this is a violation of my client's right to confront and cross-examine witnesses under the Sixth Amendment, specifically in article 1, section 10 of the Texas Constitution." The State's prosecutor responded that the child was present and available to testify, and argued, "[S]o that would remedy that situation right from the outgo." The arguments and discussions then addressed the video recording of the forensic interview. The State argued that the juvenile could address the specific techniques and methods of the advocacy center and the interview by cross-examining Zimmerly, but the juvenile countered that if he did that, the State would argue that he had opened the door to allowing the video in, and therefore, his cross-examination of Zimmerly would be limited. The juvenile clarified that his objection was "to the violation of confrontation.... It is a violation of the Constitution of the United States and the State of Texas." In response to the juvenile's Sixth Amendment objections, the State noted that the outcry witness statute is a well-settled exception to the hearsay rule in Texas, reminded the court that it had already found Zimmerly to be a credible outcry witness, and informed the trial court, "The child witness is here available to testify should they want to call him as a witness." The trial court declared that it would wait and "take it as it comes," and the juvenile asked that the trial court note its objection.
*377 The juvenile's Sixth Amendment confrontation-clause objections were timely and specific during the outcry and disposition hearings. At the outcry hearing, the trial court implicitly overruled the juvenile's confrontation-clause objection, and at the disposition hearing the trial court refused to rule. The juvenile then objected to the trial court's refusal to rule on his confrontation-clause objection. For these reasons, we find the juvenile complied with the requirements of Rule 33.1, and the alleged error in permitting Zimmerly to testify has been preserved for our consideration on appeal. TEX. R. APP. P. 33.1.
Applicable Law
Rule 801(d) defines "hearsay" as a statement that a declarant does not make while testifying at the current trial and which a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). The admissibility of hearsay is determined by the Texas Rules of Evidence and the Sixth Amendment to the U.S. Constitution. See Sanchez v. State , 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). In Texas, unless hearsay is allowed by a statute, Rules 803 or 804, or other rules prescribed pursuant to statutory authority, it is rendered inadmissible. TEX. R. EVID. 802, 803, 804.
Article 38.072 of the Texas Code of Criminal Procedure provides for the admission of hearsay evidence if its provisions are satisfied. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2017). In the prosecution of certain offenses committed against a child younger than 14 years of age, including indecency with a child by exposure and aggravated sexual assault of a child, article 38.072 allows a complainant's out-of-court hearsay statement to be admitted into evidence if the statement describes the charged offense and is offered by the first adult other than the defendant to whom the child described the offense, commonly known as the outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 1, § 2(a)(1)(A) (West Supp. 2017); TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (West Supp. 2017)(indecency with a child by exposure); TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(ii), (a)(2)(B) (West Supp. 2017)(aggravated sexual assault of a child); Sanchez , 354 S.W.3d at 484. The admissibility of the statement is conditioned upon the State providing timely notice and a written summary of the witness's statement to the adverse party, the trial court's finding that the statement is reliable based on time, content, and circumstances of the statement, and the child testifying, or being available to testify, at the court proceeding or in any other manner provided by law. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (West Supp. 2017).
The admission of hearsay evidence is limited by the Sixth Amendment to the United States Constitution, which bestows on a defendant the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. To overcome a Sixth Amendment objection to testimonial hearsay, the State is required to show that the declarant of the out-of-court statement is unavailable, and that the defendant had a prior opportunity to cross-examine the declarant.[2] See Crawford v. Washington , 541 U.S. 36, 51-52, 68-69, 124 S.Ct. 1354, 1364, 1374, 158 L.Ed.2d 177 (2004) (at a minimum, the term "testimonial" applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial); Sanchez , 354 S.W.3d at 485. The Court of *378 Criminal Appeals has held that outcry testimony admitted under article 38.072 comports with the guarantees of the Sixth Amendment because the child declarant is available for cross-examination or to testify at trial. Buckley v. State, 786 S.W.2d 357, 359-60 (Tex. Crim. App. 1990) ; see also Crawford, 541 U.S. at 59-60, 124 S.Ct. at 1369 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). Sanchez , 354 S.W.3d at 486 n.26.
At an adjudication hearing, the juvenile is guaranteed the same constitutional rights as an adult in a criminal proceeding. See In re Winship, 397 U.S. 358, 359, 365, 90 S.Ct. 1068, 1070, 1073, 25 L.Ed.2d 368 (1970). Neither the protections afforded by the Fourteenth Amendment nor the Bill of Rights are limited to adults. In re Gault , 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967) ; State v. C.J.F., 183 S.W.3d 841, 847 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (citations omitted). The United States Supreme Court determined in Gault that juveniles are entitled to notice of charges, defense counsel, the privilege against self-incrimination, and confrontation of and cross-examination of witnesses. In re Gault , 387 U.S. at 49-57, 87 S.Ct. at 1455-59 ; Hidalgo v. State, 983 S.W.2d 746, 751 (Tex. Crim. App. 1999) ; In re M.H.V.-P. , 341 S.W.3d 553, 557 (Tex.App.-El Paso 2011, no pet.).
Sixth Amendment Analysis
The Texas Court of Criminal Appeals has recognized that "Virtually all courts that have reviewed the admissibility of forensic child-interview statements or videotapes ... [are] 'testimonial' and inadmissible unless the child testifies at trial or the defendant had a prior opportunity for cross-examination." Coronado v. State , 351 S.W.3d 315, 324 (Tex. Crim. App. 2011) ; see Crawford , 541 U.S. at 68, 124 S.Ct. at 1374 (in order to introduce testimonial hearsay over a Sixth Amendment objection, State must show that the declarant who made the out-of-court statement is unavailable, and that defendant had prior opportunity to cross-examine that declarant); Sanchez , 354 S.W.3d at 485. More recently, the Texas Court of Criminal Appeals has held that the State, as a proponent of outcry evidence, bears the burden to satisfy each stringent predicate to admission of that evidence as statutorily prescribed by article 38.072. See Bays v. State , 396 S.W.3d 580, 591 (Tex. Crim. App. 2013) (hearsay exception for outcry testimony applies only if statute's stringent procedural requirements are met), citing Long v. State , 800 S.W.2d 545, 547-48 (Tex. Crim. App. 1990) (as evidence proponent, State must satisfy each element of predicate for admission of outcry testimony under article 38.072 or invoke other hearsay rule exception).
Under the first article 38.072 predicate to admission of the outcry witness's testimony, the State was required to provide the juvenile timely notice of its intent to use outcry testimony, the name of the outcry witness and a written summary of the witness's statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(A-C) (West Supp. 2017). As we have acknowledged, the State satisfied these requirements.
The second predicate requires that the trial court find, in a hearing conducted outside the jury's presence, that the statement is reliable based on the time, content, and circumstances of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2) (West Supp. 2017). This provision does not charge the trial court with determining the reliability of the statement based on the credibility of the outcry witness. Sanchez , 354 S.W.3d at 488 (also noting that outcry witness bias and ability *379 to remember are not matters given by legislature to trial court).
The juvenile challenged the reliability of the statement during the outcry hearing and prior to Zimmerly's testimony at the disposition hearing. Although not expressly ruling on the specific issue of reliability, at the outcry hearing conducted in the absence of a jury, the trial court openly declared Zimmerly to be a proper outcry witness for the aggravated sexual assault by penetration and admitted his testimony at the disposition hearing. In light of the record and the trial court's rulings, we conclude the trial court's rulings encompassed an implied finding that the statement was reliable under article 38.072.
The last predicate for admissibility of an outcry witness's testimony under article 38.072 requires that the child testify or be available to testify at the proceeding in court or in any other manner provided by law. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(3). Article 38.072 does not expressly require that the State call the child to testify.
In Briggs v. State , the Court of Criminal Appeals examined earlier versions of articles 38.071 (admissibility of video recording of child victim's statement) and 38.072, which also included the requirement that "the child testifies or is available to testify at the proceeding in court." Briggs v. State , 789 S.W.2d 918, 922 (Tex. Crim. App. 1990) ; see TEX. CODE CRIM. PROC. ANN. art. 38.071 ; Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, sec. 2(b)(3), 1985 Tex. Gen. Laws 2222, 2223 (H.B. 579)(amended 2001)(current version at TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(3) ). In Briggs , the Court determined the statutory provisions were not facially unconstitutional but may be unconstitutional as applied:
In some cases the accused may well be forced to call the child to the stand himself, or else forgo his right to crossexamine the principal witness against him. But not every defendant would be put to this unconstitutional choice. In the instant case, for example, the State called M.T. to the stand during its case in chief, permitting appellant the opportunity to crossexamine her without appearing himself to violate the apparent purpose of the statute.[4] In the event the State merely makes the child "available," but forces appellant to call her to the stand, the statute may indeed function to deprive the accused of due process and due course of law.
Briggs , 789 S.W.2d at 922. In footnote four of this passage, the Court declared, "Thus, in order to utilize the statute in a constitutional manner the State would have to call its child witness to the stand during its case in chief." Briggs , 789 S.W.2d at 922 n.4.
After deciding Briggs , the Court addressed a similar situation in Holland v. State , 802 S.W.2d 696, 699-700 (Tex. Crim. App. 1991). There the Court explained:
When the State proffers an out-of-court statement of a child witness pursuant to Article 38.072, supra, it is incumbent upon the accused to object on the basis of confrontation and/or due process and due course of law. At that point the State can respond by following either one of two courses. First the State can announce its intention to call the child declarant to the stand to allow confrontation without the accused having to call the child to the stand himself. See Buckley v. State, supra, at 360-61 ; Briggs v. State, supra, at 922. Alternatively the State can make a showing both that 1) the out-of-court statement is one that is reliable under the totality of circumstances in which it was made, Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which *380 Article 38.072, § 2(b)(2) already requires; and 2) use of the out-of-court statement in lieu of the child's testimony at trial "is necessary to protect the welfare of the particular child witness" in that particular case. Maryland v. Craig, 497 U.S. 836, [855], 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666, 685 (1990) ; see also Buckley v. State, supra, at 360 ; Long v. State, supra, at 312. If the State follows either of these two courses, the accused's objection on confrontation grounds should be overruled. Otherwise, the confrontation objection is a valid one and should be sustained , irrespective of whether the State has satisfied all of the statutory predicate for admissibility of hearsay under Article 38.072, supra.
Holland , 802 S.W.2d at 699-700 (emphasis added). In Holland , the State had failed to call the child witness to testify and did not make a particularized showing of its necessity for failing to do so, but because the appellant had failed to preserve its confrontation-clause complaint in the trial court for review on appeal, the Court did not directly address the State's failure to call the child to testify. Holland , 802 S.W.2d at 700. The Court observed, however, that the United States Supreme Court had acknowledged in California v. Green , 399 U.S. 149, 155-56, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489, 495 (1970), that confrontation-clause values may be abridged despite the admission of statements admitted under a recognized hearsay exception. Holland , 802 S.W.2d at 699. In constructing its analytical framework regarding outcry witness testimony under article 38.072, Holland also drew from the Supreme Court's two-part test in Ohio v. Roberts , 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Holland , 802 S.W.2d at 699. Under Roberts , the statement of an unavailable witness could be admitted against the defendant in a criminal trial if it bore adequate "indicia of reliability," meaning generally that the statement fell under a "firmly rooted hearsay exception" or showed "particularized guarantees of trustworthiness." Roberts , 448 U.S. at 66, 100 S.Ct. at 2539.
Since issuing its Holland opinion in 1991, the Supreme Court has rejected the Ohio v. Roberts standard in favor of the standard declared in Crawford v. Washington , 541 U.S. 36, 68-69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Under Crawford , "Where testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford , 541 U.S. at 68, 124 S.Ct. at 1374. The Court of Criminal Appeals has recognized that Crawford "[makes] clear that, in order to be constitutionally sufficient, any system of ensuring the reliability of testimonial statements must include a defendant's ability to confront the witness." See Ex parte Keith , 202 S.W.3d 767, 768 (Tex. Crim. App. 2006).
Here, the State made the child available to testify at trial in compliance with Section 2(b)(3) of article 38.072, and after the State failed to call the child as a witness, Appellant called the child to testify. Compare Soto v. State , 736 S.W.2d 823, 828 (Tex.App.-San Antonio 1987, pet. ref'd) (holding appellant was not denied right to confront and cross-examine child witness where State made child available to testify, and defendant refused to call child to testify). In this case, the State did not call the child to testify nor did it establish that the use of the outcry testimony was necessary to protect the welfare of the child.
Relying on Holland , the juvenile contends his confrontation rights under the Sixth Amendment were violated because the State did not call the child to testify as required, did not establish that its failure *381 to call the child as a witness was necessary to protect the child's welfare, and failed to show that the outcry statement was inherently reliable. See Holland , 802 S.W.2d at 699-700. The juvenile argues that the very harm sought to be avoided in Holland resulted in this case because he was required to call the child to testify under direct examination.
Because the State did not call the child to testify nor showed that the outcry testimony of M.H. and Zimmerly was necessary to protect the welfare of the child, we conclude the trial court should have sustained the juvenile's confrontation objections as valid, regardless of the State's compliance with the article 38.072 predicates for the admissibility of hearsay, and erred in failing to do so. Holland , 802 S.W.2d at 699-700 ; see also Briggs v. State , 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (where child was available and in fact did testify during the State's case in chief, appellant was afforded a full and fair opportunity to cross-examine her, thus vindicating his confrontation rights without being forced to call the child himself for the purpose of securing those rights), citing Buckley v. State , 786 S.W.2d 357, 360 (Tex. Crim. App. 1990).
Constitutional Error Standard of Review
The trial court's error of allowing M.H. and Zimmerly to testify as to the child's statements absent the State's showing the admission of this hearsay was necessary to protect the welfare of the child is of constitutional dimension. The test for determining whether a federal constitutional error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Under Chapman, a federal constitutional error "did not contribute to the verdict obtained" if the verdict "would have been the same absent the error[.]" Neder v. United States, 527 U.S. 1, 15-18, 119 S.Ct. 1827, 1837-38, 144 L.Ed.2d 35 (1999). The Chapman test is codified in Texas Rule of Appellate Procedure 44.2(a), and provides that if the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).
Harmless Error Analysis
In assessing the likelihood that the jury verdicts dispensing appellant's conviction and punishment would have been the same absent the trial court's admission of M.H. and Zimmerly's outcry testimony, we must consider the entire record. Neder, 527 U.S. at 15-16, 119 S.Ct. at 1837. In determining whether the error was harmless, we consider the importance of the hearsay statement to the State's case, whether the hearsay evidence was cumulative of other evidence, the absence or presence of evidence either contradicting or corroborating the hearsay statement on material points, and the overall strength of the case against the defendant. Woodall v. State , 336 S.W.3d 634, 639 n.6 (Tex. Crim. App. 2011), citing Davis v. State, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). We may also consider other factors contained in the record that shed light on the likely impact of the error on the mind of an average juror. Davis, 203 S.W.3d at 852. The error is harmless when the reviewing court is convinced beyond a reasonable doubt that the barred statement would probably not have had a significant impact on the mind of an average juror in making their determination. Id.
*382 The question to be resolved is not whether the verdict was supported by the evidence but, rather, the likelihood that the constitutional error was a contributing factor in the jury's deliberations in arriving at their decision, that is, whether the error adversely affected the integrity of the process leading to the decision. Langham v. State , 305 S.W.3d 568, 582 (Tex. Crim. App. 2010), citing Scott v. State , 227 S.W.3d 670, 690-91 (Tex. Crim. App. 2007). We also consider other constitutional harm factors, if relevant, such as the nature of the error, whether or to what extent it was emphasized by the State, probable implications of the error, and the weight a juror would probably place on the error. Snowden v. State , 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). We then consider whether there is a reasonable possibility that the Crawford error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Scott , 227 S.W.3d at 690 ; Davis, 203 S.W.3d at 852-53, quoting Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.' " Snowden , 353 S.W.3d at 822, quoting TEX. R. APP. P. 44.2(a) ; see also Langham , 305 S.W.3d at 582 ; Scott , 227 S.W.3d at 690-91.
The State's outcry evidence presented through Zimmerly was vital because it presented details about the nature and extent of the offensive exposure and contact that were not presented through the testimonies of M.H. and other witnesses. Although heavily laden with non-verbal responses or no responses, the child was available to testify, and did testify, as a defense witness under direct examination. The child's testimony provided some evidence regarding the alleged offenses, portions of which corroborated or contradicted the erroneously-admitted outcry witness testimony. The juvenile presented contradictory evidence on material points, asserting that he did not commit the alleged offenses. Overall, the State's case was of moderate strength, partly as a result of the State's decision not to call the child as a witness.
However, that defense counsel was required to call the child to testify cannot be said to have had no or but a negligible effect on the jury. Defense counsel called the child to testify and answer questions about showers, touching, and "pee," when the State had not first presented the child's testimony. Average jurors may have viewed defense counsel's direct examination of the child as a victimization of the young, largely inarticulate alleged victim. We consider this to be a significant factor that increases the likelihood that the error was a contributing factor in the jury's deliberation.
It is possible that the juvenile's testimony lessened the probable negative impact of the error on the jurors. Through his testimony, the juvenile provided the jury the opportunity to consider his demeanor and credibility, thus permitting the jury to fully gauge the erroneously admitted outcry testimony in light of the juvenile's testimony as well as that of the child and the child's father. This opportunity may reduce to some degree the likelihood that the constitutional error was a contributing factor in the jury's deliberations.
In considering other constitutional harm factors, we note that both the State and the juvenile emphasized the erroneously-admitted outcry testimony of M.H. and Zimmerly during closing argument during the guilt-innocence phase, but made no reference to any of Zimmerly's testimony *383 during the punishment phase of trial. However, because the child testified under defense counsel's direct examination at trial, the probable implications of the error in admitting the outcry testimony were significant, and as a result, a juror would probably place great weight on the error.
A reasonable possibility exists that the error moved the jury from a state of non-persuasion to one of persuasion, and we are unable to conclude beyond a reasonable doubt that the particular error did not contribute to the juvenile's conviction or punishment. Chapman , 386 U.S. at 24, 87 S.Ct. at 828. Issue Three is sustained.
CONCLUSION
The trial court's judgment is reversed and the case is remanded for a new trial.
Hughes, J., not participating

Although defense counsel does not explain who "Greg" is, we note that the first name of the State's attorney who cross-examined F.H. is "Greg."

The Sixth Amendment does not bar the admission of non-testimonial hearsay. Sanchez , 354 S.W.3d at 485.