

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-21-00035-CV
_____

IN THE MATTER OF J.S., A CHILD

On Appeal from the County Court at Law
Potter County, Texas
Trial Court No. 11246-1-JV; Honorable Walt Weaver, Presiding

August 11, 2021

MEMORANDUM OPINION

Before QUINN, C.J., PIRTLE and DOSS, JJ.

Appellant, J.S., a juvenile at the time of the order at issue, appeals the juvenile court's waiver of jurisdiction and order of transfer to criminal court. On appeal, he contends that the trial court's denial of counsel's motion for continuance until such time as the hearing could be held in-person violated his constitutional rights of confrontation and of effective assistance of counsel. He also contends the evidence was insufficient to permit the court to find probable cause that he committed the alleged offense. Finally, he contends that application of the juvenile justice code to transfer him to criminal court, on

these facts, leads to an absurd result that the Texas Legislature could not have intended. We affirm.

*Background*

On December 8, 2019, while J.S. was sixteen years old, he was driving his mother's vehicle after drinking with friends. Going approximately seventy-six miles per hour in a residential neighborhood, he hit a dip, lost control, hit a curb, rolled the car, crashed into a mobile home, and landed upside down in the yard. Ultimately, one of his five passengers died from blood loss from blunt force trauma. Another passenger sustained serious and long-term injuries.

Appellant was taken into the custody of the Youth Center of the High Plains and remained there unadjudicated for over a year. Approximately three weeks before he turned eighteen years old, the juvenile court heard the State's petition for waiver of jurisdiction and discretionary transfer to criminal court. After a long and detailed hearing on the matter, the juvenile court ultimately waived its exclusive jurisdiction over J.S. and transferred jurisdiction to the criminal court.

*Applicable Law on Waiver of Jurisdiction and Transfer of Criminal Court*

The juvenile court has exclusive, original jurisdiction over all proceedings involving a defendant who is a "child" when the alleged offense occurred. *See* TEX. FAM. CODE ANN. § 51.04(a) (West Supp. 2020). If, however, a juvenile court determines that certain conditions are met after an evidentiary hearing, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *See id.* § 54.02(a), (c) (West 2014). The Texas Family Code provides the following must be proved to support a waiver of exclusive jurisdiction and transfer of a child to the adult criminal justice system:

(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id.* § 54.02(a). In making the determination required by section 54.02(a)(3), the juvenile court shall consider, among other matters, the following:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f).

Here, J.S. was charged with delinquent conduct under the Texas Transportation Code, relating to his failure to stop and render aid to the passenger who sustained fatal injuries as a consequence of the accident and to the passenger who sustained serious

bodily injuries, a second- and third-degree felony, respectively. *See* TEX. TRANSP. CODE ANN. § 550.021(a), (c)(1)(A)–(B) (West Supp. 2020).

*First Issue: Right of Confrontation*

In his first issue, J.S. contends that holding the hearing virtually over counsel's objections and in the face of his motion to continue until such time as the hearing could be held in person deprived J.S. of his Sixth Amendment right of confrontation. We overrule the issue.

J.S. relies heavily on United States Supreme Court cases to support his position that the Sixth Amendment's Confrontation Clause applies to a juvenile transfer hearing. The Supreme Court has recognized the waiver of the juvenile court's jurisdiction as a "critically important" action and held that the transfer "hearing must measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 562, 86 S. Ct. 1045, 1057, 16 L. Ed. 2d 84 (1966). J.S. reads *Kent's* language to include the Sixth Amendment's right of confrontation. *Kent* itself, however, limits the breadth of its holding:

> We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. *Pee v. United States*, 107 U. S. App. D. C. 47, 50, 274 F.2d 556, 559 (1959).

*Id.*

Indeed, *Kent* goes on to explain that due process in a juvenile transfer hearing mandates "a hearing, including access to the social records and probation or similar reports which presumably are considered by the court, and . . . a statement of reasons for the Juvenile Court's decision." *Id.* at 557. We do not read *Kent* to mandate that a

4

juvenile must have the right of confrontation in a discretionary transfer hearing.[1]  To the contrary, for decades, Texas courts have specifically held that the Sixth Amendment right of confrontation does not apply to a waiver of jurisdiction hearing in a juvenile case.  *See In re A.K.*, No. 02-20-00410-CV, 2021 Tex. App. LEXIS 3499, at \*40 (Tex. App.—Fort Worth May 6, 2021, pet. filed) (mem. op.) (noting that "[t]his court[] . . . has repeatedly held that a juvenile has no right of confrontation at a discretionary transfer hearing"); *Milligan v. State*, No. 03-04-00531-CR, 2006 Tex. App. LEXIS 1356, at \*11 (Tex. App.—Austin Feb. 16, 2006, pet. ref'd) (mem. op.) (recognizing that it "has been held that neither the Sixth Amendment nor the hearsay rule applies to a juvenile certification hearing"); *In re S.J.M.*, 922 S.W.2d 241, 242 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ("The Sixth Amendment right applies specifically to criminal prosecutions and does not apply to a waiver of jurisdiction hearing."); *Alford v. State*, 806 S.W.2d 581, 581 (Tex. App.—Dallas 1991) (stating that, because the limited nature of a transfer hearing is dispositional rather than adjudicatory, no constitutional right to confrontation exists and hearsay rules do not apply), *aff'd on other grounds*, 866 S.W.2d 619 (Tex. Crim. App. 1993) (en banc); *In re R.G.S.*, 575 S.W.2d 113, 117–18 (Tex. Civ. App.—Eastland 1979, writ ref'd n.r.e.) (holding that the Sixth Amendment's right of confrontation was not applicable to a transfer hearing in juvenile case).

Here, the trial court was authorized, subject only to constitutional limitations, to order J.S. to participate remotely in the transfer hearing, even without his consent, in order to avoid the risk associated with the COVID-19 pandemic.  See *Thirty-Third Emergency*

---

[1] To be clear, at an *adjudication* hearing as opposed to a waiver of jurisdiction or transfer hearing, "the juvenile is guaranteed the same constitutional rights as an adult in a criminal proceeding."  See In re P.M., 543 S.W.3d 365, 378 (Tex. App.—El Paso 2018, no pet.) (citing *In re Winship*, 397 U.S. 358, 359, 365, 90 S.Ct. 1068, 1070, 1073, 25 L.Ed.2d 368 (1970)).

*Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 21-9004, § 3(c) (Tex. Jan. 14, 2021); *In re A.T.M.*, No. 13-21-00008-CV, 2021 Tex. App. LEXIS 5064, at *26 (Tex. App.—Corpus Christi June 24, 2021, no pet. h.) (mem. op.). Because J.S. did not have the right of confrontation at this discretionary transfer hearing, no such right served as a limitation of the trial court's authority to hold the hearing remotely. That being so, the trial court's denial of a continuance was not an abuse of discretion, and its decision to hold the hearing remotely did not deprive J.S. of any applicable constitutional guarantees.

*Second Issue: Ineffective Assistance of Counsel*

In his second issue, J.S. contends the trial court's denial of a continuance to permit an in-person hearing and decision to, instead, conduct a hearing virtually denied J.S. effective assistance of counsel. We again overrule the issue.

First, we must frame the topic and distinguish it from the more traditional ineffective-assistance-of-counsel claims. Here, J.S. maintains that it was the trial court's action in denying a continuance that operated in such a way to limit his counsel's representation; he does not complain about acts of his counsel being deficient. So, because the focus actually lies upon the trial court's action, as opposed to inaction or mistakes by counsel, we review the complaint to determine if the trial court erred. *See Ruiz v. State*, 891 S.W.2d 302, 305–06 (Tex. App.—San Antonio 1994, pet. ref'd).

As we have intimated in our disposition of the first issue, the trial court did not abuse its discretion by refusing to delay the hearing to a time when all may appear physically together. And, to the extent that the trial court's authority, under the emergency COVID order, to conduct the hearing remotely was limited by the constitutional right to

effective assistance of counsel, the record before us fails to establish that the remote hearing impeded counsel's representation of appellant in any meaningful way.

We know of no authority holding that a right to effective counsel mandates perfection. Nor does appellant cite us to any such authority. Glitches and certain technical issues regarding visibility did occur during the proceeding. Yet, all were addressed and seemingly remedied by adaptive approaches. The record reveals a carefully monitored hearing, one tailored to foster communication between all parties and mindful of the obstacles in a virtual setting.

J.S.'s complaints relating to assistance of counsel center on communication between counsel and J.S. He complains that he could not share contemporaneous notes with counsel, that his notes were "temporarily confiscated," and that staff in the room during phone conversations between J.S. and counsel made J.S. "uncomfortable" when speaking to counsel. Nevertheless, throughout the hearing the trial court took great care in assuring J.S. that he could consult with counsel at any time. On the occasion that J.S. did interrupt proceedings to consult with counsel, the trial court met J.S. courteously and first cautioned him to not mention anything regarding the substance of what he wanted to discuss with counsel. The trial court then provided a breakout room for J.S. and his counsel and went into recess. Upon reentering the hearing, the trial court again politely reminded J.S. that he need not divulge anything discussed and confirmed with both J.S. and counsel that the two were able to communicate.

As for the "temporarily confiscated" notes, we first observe that it was the trial court who first inquired into whether J.S. had pen and paper to take notes during the hearing and, upon hearing that he did not, suggested that he have them available in the event he

7

wanted to take notes. Upon the conclusion of the first day of the hearing, the trial court spoke with J.S. to let him know to fold the notes, place them in an envelope, and mark them as private attorney-client material. It then enlisted the assistance of a juvenile probation officer in the meeting to assure that the notes would remain sealed and private. The trial court also advised J.S. that the notes would be returned to him. The parties seemed to understand and accept that he would not be able to possess them in his private living area in the youth center. Furthermore, the trial court offered to contact the facility to ensure that the notes would remain sealed and private, but the juvenile probation officer assured the court that she would handle the matter. When the hearing resumed the next day, the trial court confirmed with J.S. that the notes were returned to him, and that J.S. had the opportunity to consult with counsel about them. It also reiterated to J.S. that there was no limit to the number of times he could consult with counsel during the hearing. And, though the trial court was aware that youth center staff would likely be in the room with appellant, it mentioned that if the circumstances necessitated, he would try to arrange an entirely private conversation. The latter offer was never accepted, according to the record. And, when J.S. did request to speak with counsel during the course of the proceeding, the court permitted it and often inquired about whether he was sufficiently able to consult with his attorney. J.S. generally answered in the affirmative.

All of this is to say that the record does not reveal any instance in which the virtual arrangement hindered attorney-client communication. Perhaps it was not counsel's preferred or ideal arrangement, but the trial court and the participants were very attentive in maintaining an open and communicative atmosphere in which any issues that arose were carefully considered and addressed. Again, perfection is not the standard but

8

reasonably effective is. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (observing that the right to effective assistance of counsel "does not mean errorless or perfect counsel"). And, we cannot find instances in which J.S. was denied same due to the virtual arena in which the hearing was held. So, the trial court's ruling on the continuance and its decision to conduct the hearing remotely did not deprive J.S. of effective assistance of counsel.

*Third Issue: Sufficiency of the Evidence*

As we noted at the outset, one of the determinations the juvenile court must make in order to waive its exclusive jurisdiction over a child is that "there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." TEX. FAM. CODE ANN. § 54.02(a)(3). On appeal, J.S. challenges the sufficiency of the evidence to support the probable cause determination. More specifically, he maintains that the State failed to show he acted with the requisite intent.

In evaluating a determination of probable cause, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused child committed the alleged offense. *See In re J.G.*, 495 S.W.3d 354, 374 (Tex. App.— Houston [1st Dist.] 2016, pet. denied). Probable cause is based on "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *In re C.M.M.*, 503 S.W.3d 692, 702 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (en banc)).

The offense which is commonly referred to as failure to stop and render aid is governed by the Texas Transportation Code, which provides in pertinent part, as follows:

> (a) The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:
>
> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
>
> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and
>
> (4) remain at the scene of the accident until the operator complies with the requirements of section 550.023.

TEX. TRANSP. CODE ANN. § 550.021(a) ("Accident Involving Personal Injury or Death"); *see Curry v. State*, 622 S.W.3d 302 (Tex. Crim. App. 2019). According to *Curry*, the culpable mental state for failure to stop and render aid is established by showing that the accused had knowledge that an accident occurred, and the accident was reasonably likely to result in injury or death of a person. *Curry*, 622 S.W.3d at 309; *see Boudreaux v. State*, ___ S.W.3d ___, 2020 Tex. App. LEXIS 3831, at *12–13 (Tex. App.—Houston [14th Dist.] May 7, 2020, pet. ref'd).

Here, J.S. admitted driving the crashed vehicle, waking up at the scene and discovering "there had been an accident." So too did he acknowledge hitting something and losing control of the vehicle because he "was going too fast." And, because he did not know what to do upon discovering "there had been an accident," he decided to walk home.

Elsewhere in the record, we learn that appellant had been driving with five passengers, one of which was forced to ride on another passenger's lap due to seating

constraints.  We learn that the car had been travelling at approximately 76 miles per hour in a residential area when J.S. lost control, struck a curb and a fence, rolled the vehicle, and crashed into a mobile home causing serious damage to both the vehicle and the home.  The vehicle came to rest upside down in the yard of the mobile home.  Only two people were found in the car at the time, the passenger who died from blood loss and the passenger who was severely injured.  Two other passengers who had left the scene returned to the scene to speak with officers.

So we see that an unlicensed driver who had been drinking throughout the hours preceding the crash was speeding through a residential neighborhood and lost control of the vehicle which carried passengers beyond its designed capacity.  The vehicle rolled and crashed into a residence.  This evidence coupled with practical experience are sufficient to support the trial court's belief that J.S. had knowledge of the circumstances surrounding his conduct, meaning he had knowledge that an accident occurred, and the accident was reasonably likely to result in injury or death of a person.  *See Curry*, 622 S.W.3d at 309; *Boudreaux*, 2020 Tex. App. LEXIS 3831, at *12–13.  From this evidence the trial court could have determined that there was probable cause that J.S. committed the alleged offense.

*Fourth Issue: Statutory Construction and Absurdity*

In his fourth and final issue, J.S. contends the trial court's waiver of jurisdiction and transfer order should be deemed void as a consequence of the application of the juvenile discretionary transfer scheme to arrive at an absurd result.  J.S. invites us to construe the relevant statute to exclude waiver and transfer on these facts.  We decline his invitation

11

to hold, in effect, that only minors are immature enough to drive while intoxicated and injure others.

J.S. relies on extrajudicial sources to characterize his conduct as inherently juvenile and, that being so, to subject a juvenile to the adult criminal justice system for conduct that is characteristic of a juvenile is an absurd result that the Texas Legislature could not have intended. Yet, it is not the job of the courts to rewrite statutes or "to choose between competing policies addressed by legislative drafting." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 614 (Tex. 2006) (orig. proceeding). "We apply the mandates in the statute as written." *Id.*

Only when the application of the plain language of the statute produces an absurd result, would the court system intervene in such a way as to deviate from application of the plain language of the statute. *See generally In re Acad., Ltd.*, No-19-0497, 2021 Tex. LEXIS 623, at *7 (Tex. June 25, 2021) (orig. proceeding); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). However, the bar to reach "absurdity" in this context is a high one, as it should be. *See City of Forth Worth v. Rylie*, 602 S.W.3d 459, 467 (Tex. 2020) (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)). Even if the result seems to us to be unreasonable, "reasonableness is not the standard for eschewing plain statutory language." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 570 (Tex. 2014) (quoting *In re Blair*, 408 S.W.3d 843, 859 (Tex. 2013) (orig. proceeding) (Boyd, J., concurring)).

Analyzing a particular outcome that, to some, may seem unanticipated, perplexing, or even unfair, is thorny business, as the Texas Court of Criminal Appeals has noted:

> But determining whether a particular result is absurd is a dangerously subjective endeavor. Our sister court has observed that the bar for

concluding a plain-faced interpretation of a statute would lead to absurd results is, and should be, high.  It should be reserved for truly exceptional cases, and mere oddity does not equal absurdity.  Even if a consequence is unintended, improvident, or inequitable, it may still fall short of being unthinkable or unfathomable.  The focus should be on whether it is quite impossible that a rational legislature could have intended it.

*Ritz v. State*, 533 S.W.3d 302, 308 (Tex. Crim. App. 2017) (citing *Combs*, 401 S.W.3d at 630–31).

Here, "[w]ithout regard to the wisdom or desirability" of the application of the transfer statute to this set of circumstance, we cannot agree that it is absurd.  *See Anadarko Petrol. Corp. v. Houston Cas. Co.*, 573 S.W.3d 187, 197 (Tex. 2019).  J.S. presents the matter in such a way as to suggest that transfer on these facts is somewhat paradoxical.  Even were we to adopt his presentation as our own, however, we cannot agree that application of the juvenile jurisdictional waiver and transfer statutory scheme on these facts rises to the level of absurdity such that we would be authorized to re-write the plain language of the statute.  Simply put, adults too drink and drive.  To treat a minor as an adult when engaging in activities performed by adults is not absurd when all other statutory prerequisites are met.  We overrule J.S.'s fourth and final issue.

Having overruled the issues presented to us on appeal, we affirm the trial court's waiver of jurisdiction and discretionary transfer order.


Brian Quinn
Chief Justice

13