COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| BRIAN MILLAN, | § | No. 08-19-00092-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd Judicial District Court, |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20190D00102) |

## **O P I N I O N**

Under the jury charge as given in this case, Appellant Brian Millan could be found guilty of the Class A misdemeanor offense of assault family violence if the jury found, beyond a reasonable doubt, that he committed an assault on either one of two specified dates.[1] No objection was raised below, or on appeal, as to the form of the charge. Instead, Appellant challenges the admissibility of video statements of the complaining witness for each of the respective assaults, and several testimonial statements of the investigating police officers. We agree with some, but not all, of Appellant's challenges to that evidence. Nonetheless, we conclude that given the nature of the remaining evidence to support the conviction for at least one of the assaults, any error in the admission of the challenged evidence did not, beyond a reasonable doubt, lead to an erroneous

---

[1] Tex.Penal Code Ann. § 22.01(a)(1), (b).

1

conviction. Accordingly, we affirm.

## I. PROCEDURAL BACKGROUND

The complaining witness, Bunni Martinez, was in an on-again, off-again dating relationship with Appellant. Stemming from two incidents in which he allegedly assaulted Martinez on February 26, 2018, by unspecified means, and again on May 12, 2018, by striking her face or head with this hand, Appellant was charged with one count of continuous violence against a family member.[2] Appellant was also charged with two counts of child endangerment, alleging that during the May 12th incident, he pulled on the steering wheel of a car being driven by Martinez, while his two children were in the car, placing them in danger. The jury returned not guilty verdicts on each of these three charges.

But the jury was also asked if Appellant committed the lesser included offense of assault by family violence. Under that jury question, Appellant could be found guilty if he committed either the assault on February 26th, by biting Martinez's body, *or* the May 12th assault by striking her face or head with his hand.[3] And the jury found him guilty of the lesser included offense of

---

[2] TEX.PENAL CODE ANN. § 25.11.

[3] In particular, the charge read as follows:

> "Now if you find from the evidence beyond a reasonable doubt that the Defendant, BRIAN MILLAN, in El Paso County, Texas, against a member of the defendant's family or a member of the defendant's household, or a person with whom the defendant has or has had a dating relationship, intentionally, knowingly, or recklessly caused bodily injury to Bunni Martinez, by striking her about the face or head with the hand of the defendant on or about the 12th day of May, 2018, or by biting Bunni Martinez about the body on the 26th day of February, 2018, then you will find the Defendant, BRIAN MILLAN, Guilty of the Lesser-Include [sic] offense of Assault Family Violence (Verdict Form G).

> Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will find the Defendant, BRIAN MILLAN, Not Guilty of the Lesser Included offense of Assault Family Violence (Verdict Form H)[.]"

The jury signed verdict Form G.

assault family violence.

### A. The Videotaped Statements

After each of the two alleged assaults, Martinez gave videotaped statements while at a police station. In each of the statements, she described the events leading up to, and the details of the alleged assault. For the February 26th incident, she described how Appellant became upset with her, and reluctantly came to pick her up, when her car would not start at a school's parking lot. Upon his arrival, Appellant yelled at her as she was transferring their children's two car seats from her car into his vehicle. Despite her protestations, Appellant then drove to his friend's house, rather than take her home. When they arrived at the friend's house, the argument escalated when she attempted to take the car seats out of his car. Appellant then pulled her inside his vehicle and drove away from the friend's house. She recounted that Appellant began hitting her as she attempted to exit the vehicle, and then bit her two or three times on the buttocks while she attempted to crawl into the backseat. After Martinez managed to exit the vehicle, Appellant drove away, and she was assisted by two good Samaritans who called 911 on her behalf.

For the May 12th incident, Martinez is seen in the videotape with dried blood on her face, looking visibly upset. She reported that following a fight with Appellant, she advised him that she was leaving his residence to go to her mother's house. Appellant initially assisted Martinez with putting her things in the car. However, he soon got into the car and refused to leave. Martinez drove away with Appellant in the passenger seat and their two children, ages two and one, in the back seat. As she was driving to her mother's house, Appellant hit her in the face. Appellant also tried to stop the car by grabbing the gear knob and her keys, and he also grabbed the steering wheel three or four times, which caused the car to swerve off the road at least twice. When asked if this was the first time that he had assaulted her, she referred to the February incident

in which Appellant had bitten her, as well as to a prior incident in which he had allegedly choked her in front of his family members.

### B. Appellant Challenges the Admissibility of the Videotapes

Prior to trial, the State alerted the trial court of its intent to admit the two videotaped statements, claiming that they were both admissible under the excited utterance exception to the hearsay rule. Appellant objected, arguing that they did not fit within that exception, and that their admission would violate his constitutional right to confront witnesses because it was not clear at the time whether Martinez intended to appear in court for trial. Because of the uncertainty of whether Martinez would appear, the trial court initially deferred ruling on the request. However, Martinez did appear in court, and while the State was presenting evidence of the February 26th incident, it renewed its request to admit the February videotaped statement. In response, Appellant again objected that the videotape was inadmissible hearsay and violated his right to confront witnesses. The trial court, however, concluded that the statement was admissible as an excited utterance, and that Appellant's right to confrontation would not be violated as Martinez had appeared in court and he would therefore be able to confront her about her statement when she was called as a witness.

### C. Martinez Testifies, but Soon Invokes the Fifth Amendment

When Martinez took the stand, she testified to the same events that led up to the February 26th assault, including that Appellant was upset when she called him to assist her with her car and refused to take her home. However, in contrast to her recorded statement, she testified that she played an active role in the struggle that ensued after Appellant refused to take her home, claiming that she pinched his arm several times, shoved him, and kicked him as she was trying to exit the car. Martinez was, however, consistent in testifying that Appellant bit her "butt cheek"

4

as she was trying to exit the car though the back seat.

Upon questioning by the State, Martinez acknowledged that she had included additional facts in her testimony that she had not revealed to police in her videotaped statement. Martinez, however, denied that she was changing her story because she was scared of Appellant, and instead claimed that she was doing so based on her obligation to tell the truth in court. At defense counsel's behest, the court spoke with Martinez outside the presence of the jury and advised her of the possible consequences if it were later determined that she was not telling the truth. The court further advised Martinez that she might need legal counsel, and after she agreed, the court appointed an attorney from the public defender's officer to represent her. Thereafter, the State continued its questioning of Martinez about both the February and the May incidents, but Martinez responded to almost every question by stating that she was invoking the Fifth Amendment upon advice of her counsel. The only exception was when the State asked her if the person who was the "subject of all of our conversation" was in the courtroom, and she responded by identifying Appellant.

### D. The Trial Court Admits the Videotaped Statement on the May Incident

The State thereafter moved once again to introduce the recording of Martinez's videotaped statement of the May 12th incident, this time contending that it was admissible as a "past recollection recorded." Once again, Appellant objected to its admission, on the ground that he could no longer confront Martinez as a witness, given her repeated invocation of the Fifth Amendment, and that playing the videotape would violate his Sixth Amendment right to confront his accuser. The trial court, however, responded that Appellant did not yet know what Martinez's testimony would be on cross-examination, and allowed the videotaped statement into evidence.

Following the presentation of the videotape, Appellant's attorney attempted to cross-

5

examine Martinez about the two incidents, but Martinez once again repeatedly invoked the Fifth Amendment, and refused to answer any of his questions.

### E.   The Verdict and Punishment

The trial court instructed the jury that in order to find Appellant guilty of continuous family violence, it needed to find that Appellant had engaged in conduct two or more times during a 12-month period that constituted an offense of assault against Martinez; in particular, the trial court instructed the jury that it was required to find that Appellant bit Martinez during the February 26th incident and that he struck her face or head with his hand during the May 12th incident.   The trial court also instructed the jury on the lesser included offense of assault by family violence, advising the jury that it could find Appellant guilty of the lesser included offense if it found that he had committed either the assault on February 26th (by biting Martinez's body), or the May 12th assault (by striking her face or head with his hand).

The jury subsequently found Appellant not guilty of the two counts of child endangerment stemming from the May 12th incident, as well as not guilty of the offense of continuous family violence; however, it found him guilty of the lesser included offense of assault family violence. Thereafter, the jury assessed Appellant a one-year term in county jail, but recommended that the sentence be probated, and that Appellant be placed on community supervision.   The trial court entered a judgment of conviction in accordance with the sentence recommended by the jury, and this appeal followed.

## II.   ISSUES ON APPEAL

In Issues One through Four, Appellant contends that the trial court erred in admitting Martinez's two videotaped statements, arguing that the admission of the statements violated the rule against hearsay, and his Sixth Amendment right to confront witnesses.   The State responds

6

that both videotapes were admissible as excited utterances, but by failing to address the issue in its briefing, it tacitly acknowledges that their admission violated Appellant's Sixth Amendment right to confront witnesses given Martinez's invocation of her Fifth Amendment rights. The State does contest whether Appellant preserved error for the February videotaped statement. Additionally, the State argues that the trial court's error in admitting the videotapes was harmless beyond a reasonable doubt.

In Issues Five and Six, Appellant contends that the trial court also erred in allowing two of the investigating police officers to testify indirectly to statements that Martinez made to them at the police station, arguing that their testimony constituted "backdoor" hearsay. The State counters that the officers' testimony was properly admitted as "background" information to explain the steps they took in their investigation, and that Appellant did not lodge proper objections to some of that testimony. In any event, the State claims their testimony did not harm Appellant's case.

We begin by addressing whether the challenged evidence was admissible, then separately address the question of harm.

### III. ADMISSIBILITY OF THE VIDEOTAPED STATEMENTS

Appellant challenges the admissibility of both the February 26th and May 12th videotaped statements under both the Confrontation Clause and the hearsay rule.

**A. Standard of Review and Applicable Law: Confrontation Clause**

The Sixth Amendment guarantees an accused, in all federal and state prosecutions, the right "to be confronted with the witnesses against him." U.S. CONST. amends. VI, XIV; *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Under the U.S. Supreme Court's holding in *Crawford*, confrontation rights are implicated when an out-of-court statement is made by an absent witness,

7

and that statement is testimonial in nature. *Crawford*, 541 U.S. at 50-52. "Testimonial" statements may include statements taken by police officers in the course of interrogations and custodial examinations, as well as similar pretrial statements the declarant would "reasonably expect to be used prosecutorially." *Id.* at 52, 68; *see also Langham v. State*, 305 S.W.3d 568, 576 (Tex.Crim.App. 2010), *citing Wall v. State*, 184 S.W.3d 730, 735 (Tex.Crim.App. 2006); *see also In re M.H.V.-P.*, 341 S.W.3d 553, 557-58 (Tex.App.--El Paso 2011, no pet.) (there is little doubt that statements made during formal police interrogations are testimonial in nature). In particular the Court has recognized that an accuser who makes a formal statement to government officers "bears testimony." *Crawford*, 541 U.S. at 51. Under *Crawford*, testimonial statements are admissible only if (1) the declarant is unavailable at trial, and (2) the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 53-54.

Once an objection is made based on *Crawford*, the proponent of a statement made by an unavailable witness bears the burden of demonstrating its admissibility. *See De La Paz v. State*, 273 S.W.3d 671, 680-81 (Tex.Crim.App. 2008) (once defendant objected to the admission of evidence under *Crawford,* the burden shifted to the State, as the proponent of that evidence, to establish that it was admissible under *Crawford*). And in determining whether a trial court erred in overruling a *Crawford* objection, we review the trial court's ruling de novo. *In re M.H.V.-P.*, 341 S.W.3d at 556, *citing Wall*, 184 S.W.3d at 742; *see also Mendoza v. State*, No. 08-17-00230-CR, 2019 WL 6271271, at *4 (Tex.App.--El Paso Nov. 25, 2019, pet. ref'd) (not designated for publication).

**B. Did Appellant Preserve His Sixth Amendment Argument for Our Review?**

The State argues that as to the February videotaped statement, Appellant failed to preserve error. It claims that although Appellant initially raised a Confrontation Clause objection to the

admission of the evidence prior to trial when the parties believed that Martinez was not going to appear to testify, he did not renew his objection after Martinez exercised her Fifth Amendment right to remain silent. The State contends that because the videotape had already been admitted before this new ground for denying its admission arose, Appellant was required to renew his objection by moving to strike the videotape at that time, and that because he failed to do so, he did not preserve his Sixth Amendment argument for appeal. We disagree.

The right of confrontation is a trial right that must be preserved by a timely and specific objection. *Mallory v. State*, 752 S.W.2d 566, 569 (Tex.Crim.App. 1988) (en banc); *see also Paredes v. State*, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004) (where defendant only objected to the admission of a witness's testimony on hearsay grounds, and not on Confrontation Clause grounds, he failed to preserve Confrontation Clause argument for appeal); *Ortiz v. State*, No. 08-15-00344-CR, 2017 WL 3667829, at *4 (Tex.App.--El Paso Aug. 25, 2017, pet. ref'd) (not designated for publication) (holding that a Confrontation Clause complaint is not fundamental error and is thus waived on appeal if a defendant fails to object at trial on that basis).

Here, Appellant made repeated objections to the admission of both the February and the May videotapes on Sixth Amendment grounds both before trial started, and each time the State sought to admit them. The only question then, is whether Appellant was required to renew his objection and move to strike the already-admitted February videotape from the record after Martinez invoked her Fifth Amendment right to remain silent. In support of its argument that Appellant was required to do so, the State relies solely on our sister court's holding in *Gordillo v. State*, No. 01-13-00477-CR, 2015 WL 730593 at *3 (Tex.App.--Houston [1st Dist.] Feb. 19, 2015, no pet.) (mem. op., not designated for publication). In that case, a defendant argued on appeal that he was denied his Sixth Amendment right to cross-examine a witness about the witness's

9

immigration status because the witness invoked the Fifth Amendment right not to incriminate himself in response to the defendant's questions. *Id.* The court, however, held that he did not preserve his Sixth Amendment argument, as his only argument in the trial court was that he was denied his right to impeach the witness's credibility without mention of the constitutional confrontation right. *Id.* at 4. In reaching its conclusion, the court further noted that the defendant did not move to strike the witness's direct testimony after he invoked his Fifth Amendment rights. *Id.*

As set forth above, however, and unlike the defendant in *Gordillo*, Appellant made repeated Sixth Amendment objections to the admission of the February videotape prior to its admission. Although he did not move to strike the February videotape after Martinez invoked her Fifth Amendment rights, he did argue that his Sixth Amendment rights were violated due to her invocation of the Fifth Amendment, given his inability to cross-examine Martinez, when the State later sought admission of the May videotape. Under these circumstances, when viewing the record as a whole, we believe that Appellant sufficiently conveyed his Sixth Amendment objection to the trial court and did so at a time when the trial court was in a position to correct the error. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex.Crim.App. 2005) (recognizing that the "purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection."); *see also Douds v. State*, 472 S.W.3d 670, 674 (Tex.Crim.App. 2015) (recognizing that trial court must resolve questions of error preservation in the "context of the entire record," and should not consider arguments in isolation). As the Texas Court of Criminal Appeals has recognized, "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in

a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992) (en banc). We believe that Appellant has met that standard, and we therefore decline to find a forfeiture under these circumstances.

## C. Admission of the February Videotape Violated Appellant's Sixth Amendment Rights

Appellant contends that the admission of the February videotape violated his Sixth Amendment Confrontation Clause rights, given Martinez's invocation of her Fifth Amendment right and her refusal to answer his questions about the February incident on cross-examination. We agree. Martinez's statements were testimonial in nature, as they were made in a formal setting, in response to a police investigation, and under circumstances that a reasonable person in Martinez's position would have understood to be intended for prosecutorial use. *See Wall*, 184 S.W.3d at 742 (even if statement qualified as an excited utterance, it could still be considered testimonial in nature if the declarant, despite being dominated by the emotions of a startling event, had the capacity "to appreciate the legal ramifications of her statement."). Additionally, Martinez became unavailable for cross-examination when she invoked her Fifth Amendment rights. *See Keller v. State*, 662 S.W.2d 362, 364 (Tex.Crim.App. 1984) (en banc) (recognizing that when a defendant is prevented from cross-examining a prosecution witness due to the witness's invocation of his Fifth Amendment privilege against self-incrimination, the defendant's Sixth Amendment rights are implicated); *see also* TEX.R.EVID. 804(a)(1) and (2) (a declarant is unavailable as a witness if the declarant: "(1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies [or] (2) refuses to testify about the subject matter despite a court order to do so"). Finally, Appellant had no prior opportunity to cross-examine her. In response, the State does not dispute any of these points.

11

### D. Admission of the May Videotape Violated Appellant's Sixth Amendment Rights

For the same reason, the admission of the May videotaped statement violated Appellant's right to confrontation. The statement was equally testimonial, and Appellant had no ability to cross-examine Martinez, who doggedly invoked her right against self-incrimination.

### E. We Decline to Reach the Hearsay Issue

While Appellant also contends that the admission of the two statements violates the hearsay rule (measured against the State's claim that they were excited utterances), we have no need to address that issue. The harm standard for a Confrontation Clause violation requires a reversal unless we are convinced beyond a reasonable doubt that the error did not lead to the rendition of an improper judgment. TEX.R.APP.P. 44.2(a). Conversely, any error based on the hearsay rule would invoke the more lenient harm standard of Rule 44.2(b). Because we have found constitutional error, and will apply the stricter Rule 44.2(a) harm standard as to that error, there is no need to address the hearsay error, if any.

## IV. THE INVESTIGATING OFFICER'S TESTIMONY

Appellant separately challenges the trial court's failure to sustain his hearsay objections to several statements made by the investigating police officers. The challenge is directed against the testimony of two police officers: Officer Cory Gadra who responded to the February 26th incident and took Martinez's videotaped statement, and Officer Cruz Duran who interviewed Martinez over the May 12th incident. Appellant contends portions of their testimony that we set out below, were used as a backdoor to admit Martinez's version of the events and was excludable as hearsay.

### A. Applicable Law and Standard of Review

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter

12

asserted." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex.Crim.App. 2011), *citing* TEX.R.EVID. 801; *see also Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002). Hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or it is allowed "by other rules prescribed pursuant to statutory authority." *Sanchez*, 354 S.W.3d at 484, *citing* TEX.R.EVID. 802; *see also Willover*, 70 S.W.3d at 845 ("hearsay evidence is inadmissible unless it falls within one of the many exceptions" to the general rule). In general, a trial court has the discretion to determine whether an out-of-court statement is admissible under an exception to the general hearsay exclusion rule, and a reviewing court should not reverse a trial court's decision to admit evidence under a hearsay exception, unless a clear abuse of discretion is shown. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.*; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

An exception to the hearsay rule, however, enables testifying officers to place their investigative actions in context and explain their reasons for performing certain acts (hereinafter referred to as the "investigative exception."). *See Schaffer v. State*, 777 S.W.2d 111, 114-15 (Tex.Crim.App. 1989) (en banc) ("[a]n arresting officer should not be put in the false position of seeming just to have happened upon the scene" and allows him to provide "some explanation of his presence and conduct."). Accordingly, "testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex.Crim.App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex.Crim.App. 2015). In

13

particular, this exception allows an investigating officer to refer to out-of-court statements made by witnesses during an investigation to explain how the defendant became the subject of the investigation. *See Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App. 1992) (officer's testimony in which he repeated several out-of-court statements made by a witness that implicated the defendant, did not constitute inadmissible hearsay where it was offered to explain why he began to suspect the defendant and ultimately obtained a warrant for his arrest); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995) (en banc) (the State's introduction of an appointment book and application form that established that defendant had an appointment at a massage therapy office at the time two individuals were murdered in the office was admitted to show how he became a suspect and was not inadmissible hearsay).

However, the State may not rely on the investigative exception to offer an officer's testimony to purportedly explain his investigative steps where the "inescapable conclusion" is that the officer is actually reporting out-of-court statements received from a witness during the investigation. *See Head v. State*, 4 S.W.3d 258, 261 (Tex.Crim.App. 1999) (en banc) ("where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly."), *quoting Schaffer*, 777 at 114. Such testimony, often referred to as "backdoor" or "indirect" hearsay, is inadmissible when it appears that the officer's testimony, while not directly quoting a witness's out-of-court statements, is nevertheless being offered to indirectly introduce the witness's statements. *See*, *e.g.*, *Schaffer*, 777 S.W.2d at 113 (officer's testimony, which was "designed to circumvent the hearsay rule and present the jury with information from unsworn, out-of-court sources," was inadmissible "backdoor hearsay"); *Head*, 4 S.W.3d at 265 (referring to officer's testimony, in which he effectively testified to the

14

inadmissible statements of a non-testifying informant as being "indirect hearsay," which was inadmissible at trial); *Soroa v. State*, No. 08-98-00119-CR, 2000 WL 1514096, at \*10-11 (Tex.App.--El Paso Oct. 12, 2000, pet. ref'd) (not designated for publication) (referring to testimony in which there is an "inescapable conclusion" that an officer's testimony is being offered to prove the substance of a witness's out-of-court statement as "backdoor hearsay."). In determining whether an officer's testimony explaining the investigative steps crossed the line into impermissible backdoor or indirect hearsay, a court should consider "how strongly the content of the out-of-court statement can be inferred from the context," or in other words, how strongly it supports an inference that the State was "attempting to do indirectly what it could not do directly." *Head*, 4 S.W.3d at 261; *see also Soroa*, 2000 WL 1514096, at \*10.

## B.  Officer Gadra's Testimony About the February 26th Incident

At trial, the State called Officer Gadra to testify about his initial encounter with Martinez at the scene of the February 26th incident.   When Officer Gadra began to reveal what Martinez had told him at the scene, the trial court sustained Appellant's hearsay objection.   The officer then testified that Martinez agreed to meet with him and his partner at the police station to make a statement.   Officer Gadra testified that he thereafter spent at least an hour at the police station investigating the incident.   When asked what he was investigating, Officer Gadra responded that he was investigating what he had "documented" as an "assault family violence case."   Thereafter, the following exchange occurred:

[PROSECUTOR]:   What was manner of the assault?

[DEFENSE COUNSEL]:   Objection.   Hearsay.

[PROSECUTOR]:   I'm asking him from his investigation what the manner of the assault was.

[DEFENSE COUNSEL]:   He's asking for something he could only have learned

15

base[d] on the something someone's telling him.   That's hearsay.

[PROSECUTOR]:   Statements offered for the truth of the surrounding investigation.

THE COURT:   Overruled.   Objection overruled.

[OFFICER GADRA]:   It was based on an offense that she alleged resulting from an incident that occurred from Mr. Millan.

[PROSECUTOR]:   What did your investigation show you the incident was?

[OFFICER GADRA]:   That she was -- that she received --

[DEFENSE COUNSEL]:   Once again, objection.   Hearsay.   He's basing this solely on things told to him by a person who is not currently testifying.   There's been no predicate whatsoever laid for any hearsay exception.   And to say that it's in the context of his investigation, it's being offered for the truth of the matter asserted.

[PROSECUTOR]:   It is not, Your Honor.   We're asking him -- his investigation is not being offered for the truth of the matter asserted.

THE COURT:   Overruled.

[OFFICER GADRA]:   That she received a bite mark on the listed date on February 26th.

[PROSECUTOR]:   Okay.   Where was that -- what did your investigation reveal that bite mark was located?

DEFENSE COUNSEL:   Once again, same objection.   Can I have a running objection, Your Honor?

THE COURT:   That's fine.   And it's overruled.

[OFFICER GADRA]:   On her posterior upper thigh . . . .   The right upper buttocks cheek.

Officer Gadra was next asked to review the photographs of Martinez's injuries, and after

he testified that they were "consistent" with her story, the following dialogue then occurred:

[PROSECUTOR]:   So after reviewing these photos after they were downloaded, what did the totality of the circumstances lead you to believe?

[OFFICE GADRA]:   That there was an incident that occurred that night as a result of that.   We found enough probable cause to issue an arrest warrant for Mr. Millan as a result of the family violence assault.

16

The State thereafter questioned Officer Gadra regarding whether he could identify Appellant in court, and Appellant objected that the officer had failed to lay a predicate to demonstrate how he knew who Appellant, was. In response, the officer testified that he was "able to research his name in our report ready system," and found a photograph of Appellant at that time, which in turn allowed him to recognize Appellant in court. After questioning Officer Gadra on voir dire, Appellant renewed his objection to Officer Gadra's identification testimony based on his lack of personal knowledge of his identity, and added an objection that his testimony identifying Appellant was based solely on hearsay, i.e., based on statements that Martinez made to him at the station. The trial court, however, overruled his objections.

Appellant contends that the trial court erred in overruling his various hearsay objections, contending that the State's questions were a "backdoor" way of allowing in Martinez's out-of-court statements. The State counters that the statements were not hearsay, as they were not offered for the truth of the matter asserted, and were instead offered to provide the jury with the "details" of Officer Gadra's investigation, as well as to explain why he concluded that there was probable cause to issue a warrant for Appellant's arrest. In other words, the State contends that the officer's testimony was simply relevant "background" information to explain the officer's actions, and therefore should not be considered hearsay.

We agree with the State that to the extent that Officer Gadra's testimony provided background information explaining why he targeted Appellant as a suspect, his testimony came within the investigative exception to the hearsay rule. Thus, the trial court properly allowed Officer Gadra to testify that based on the "totality of the circumstances" of his investigation, he concluded that an "incident" had occurred on the night in question, and that he had enough probable cause to issue an arrest warrant for Appellant on a charge of family violence assault.

17

*See, e.g.*, *Sanchez v. State*, 243 S.W.3d 57, 65 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd) (where officer's testimony did not reveal the details of the information that the informant provided to him, his "reference to the confidential informant was merely a general description of possible criminality that provided an explanation for why [the officer] developed appellant as a suspect and later secured a warrant."); *McCreary v. State*, 194 S.W.3d 517, 521-22 (Tex.App.--Houston [1st Dist.] 2006, no pet.) (officer's testimony that his investigation led to accused being a suspect fit "snugly" under the hearsay exception for investigative testimony where the testimony did not leave the jury with the inescapable conclusion that a witness was testifying through the officer).

However, Officer Gadra's testimony ran afoul of the hearsay rule when he testified that his investigation led him to believe that Martinez had suffered a bite mark to her buttocks during the incident involving Appellant. This testimony was not elicited in order to explain any action that Officer Gadra took, and was instead made in response to the State's question regarding whether he knew the means by which Martinez had been assaulted. Further, this question came immediately after Officer Gadra testified that he had spent an hour with Martinez investigating the family violence offense, thereby creating an inescapable inference that he obtained this information from Martinez herself. *See Burks v. State*, 876 S.W.2d 877, 898 (Tex.Crim.App. 1994) (en banc) (where officer testified that he spoke with both the victim to a robbery and an eyewitness, and thereafter provided the jury with a detailed description of the individual for whom he was looking, the inescapable inference from the officer's testimony was that the victim and eyewitness had provided him with that description); *see also Ex parte Walker*, 425 S.W.3d 267, 277 (Tex.Crim.App. 2014) (where prosecutor questioned officer regarding whether his investigation focused on defendant prior to and after speaking with a witness his affirmative response to the question constituted "indirect hearsay."). Accordingly, the State did not use

18

Officer Gadra's testimony to explain his investigative steps, and that it was instead offered to indirectly convey to the jury what Martinez had told him during his investigation regarding the specific details of the assault itself, thereby rendering it inadmissible backdoor hearsay. *See Sandoval v. State*, 409 S.W.3d 259, 283-84 (Tex.App.--Austin 2013, no pet.) (officer's testimony "provided far greater detail than was reasonably necessary" to explain why he believed the case against the defendant should be investigated further), *citing Langham v. State*, 305 S.W.3d 568, 580 (Tex.Crim.App. 2010) (detective's testimony regarding his communications with a confidential informant provided far greater detail than was reasonably necessary to explain why police decided to investigate appellant's residence); *Tienda v. State*, 479 S.W.3d 863, 880 (Tex.App.--Eastland 2015, no pet.) (detective's summation of complaining witness's allegations against defendant provided "specific details rather than a generalized description of criminality," and therefore "exceeded the permissible bounds of background information from a police officer.").

### C. Officer Duran's Testimony About the May 12th Incident

Appellant's sixth issue contends that the trial court erred in admitting portions of Officer Duran's testimony--germane to the May 12th incident--which he believes constituted inadmissible hearsay. In particular, he points to the following two passages that occurred after Officer Duran testified that Martinez had arrived at the police station to make a report:

[PROSECUTOR]: What type of report did Ms. Martinez want to make?

[OFFICER DURAN]: It was an assault.

[PROSECUTOR]: Okay. And do you recall more details about that?

[OFFICER DURAN]: Yes, ma'am. She was -- she had told us that --

[DEFENSE COUNSEL]: Objection. Hearsay.

[PROSECUTOR]:   Goes to the nature of the investigation.

[THE COURT]:   Sustained.

[THE STATE] :   Did you ask questions of Ms. Martinez?

[OFFICER DURAN]:   Yes.

[PROSECUTOR]:   What questions did you ask her?

[OFFICER DURAN]:   Where the assault happened, where she was hit, who assaulted her, did she feel pain.

[PROSECUTOR]:   Did the assault, based on what you got from her, did it occur in El Paso County, Texas?

[OFFICER DURAN]:   Yes, ma'am.

In response to further questioning, Officer Duran explained that he then took photographs of Martinez and conducted a videotaped interview.   Thereafter, the State had Officer Duran identify eight photographs taken of Martinez.   The photographs were admitted without objection, and Officer Duran testified, again without objection, that the injuries depicted in the photographs of Martinez's face were "consistent" with having been struck and with "the story" Martinez had given him and the facts as he "knew them at the time."   In addition, Officer Duran testified that he took photographs of Martinez's hands and arms for the purpose of determining whether she had been "grabbed," and in general to determine if the photographs went with "what [Martinez] told us."

Appellant complains that Officer Duran was in effect relaying the statements that Martinez made to him regarding how she had received her injuries, and therefore constituted the same type of "backdoor" hearsay that he complained about with regard to Officer Gadra's testimony.   As the State points out, however, although Appellant made one hearsay objection to the State's line of questioning (which was sustained), Appellant made no objection to any of the additional

20

questions asked by the State. We agree with the State that Appellant therefore failed to preserve his challenge to Officer Duran's testimony for our review.

The erroneous admission of evidence, including hearsay evidence, is not considered fundamental error, and therefore, in order to preserve such error for appellate review, the record must reflect that the complaining party raised the issue with the trial court in a timely and specific request, objection or motion, and obtain a ruling on such. TEX.R.APP.P. 33.1(a)(1); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex.Crim.App. 1996) (en banc) (recognizing that the admission of hearsay evidence is not "fundamental error" that can be raised for the first time on appeal, and instead must be preserved by a timely and specific objection); *Barnett v. State*, No. 08-10-00219-CR, 2012 WL 2832557, at *2 (Tex.App.--El Paso July 11, 2012, no pet.) (not designated for publication) (same); *see also Resendez v. State*, 306 S.W.3d 308, 312 (Tex.Crim.App. 2009) (error may not be predicated upon a ruling which admits or excludes evidence unless the complaining party makes a timely and specific objection to the evidence or moves to strike it from the record). In addition, to preserve error in the admission of evidence, a party must object each time the evidence is offered, or conversely obtain a running objection or request a hearing outside the presence of the jury. *Haley v. State*, 173 S.W.3d 510, 516-17 (Tex.Crim.App. 2005); *Peralta v. State*, 338 S.W.3d 598, 609 (Tex.App.--El Paso 2010, no pet.) (same).

Here, after making his initial objection to the prosecutor's question regarding Martinez's report, Appellant did not continue to object to the State's line of questioning, nor did he lodge a running objection or request a hearing outside the presence of the jury. Therefore, Appellant failed to preserve this issue for our review, and may not raise his hearsay challenge for the first time on appeal. Appellant's Issue Six is Overruled.

21

## V. WAS THERE ANY HARM?

Having identified the evidence that should have been excluded, we next turn to the question of whether the record demonstrates that the erroneous rulings resulted in any harm to Appellant.

### A. Harm Standard

In general, a trial court's erroneous admission of evidence falls into one of two boxes: constitutional error that requires reversal unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment" and non-constitutional error, which we must disregard if it does not affect a party's "substantial rights." TEX.R.APP.P. 44.2(a) and (b). Here, we deal with both standards.

Confrontation Clause errors under *Crawford* are evaluated utilizing a *Chapman* harmless-error analysis which is a particularized application of Rule 44.2(a)'s constitutional harm standard. *See Davis v. State*, 203 S.W.3d 845, 850 (Tex.Crim.App. 2006), *citing Chapman v. California*, 386 U.S. 18 (1967). The correct inquiry in conducting such a harm analysis is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Davis*, 203 S.W.3d at 850. In applying this harm analysis, we are guided by the following list of nonexclusive factors: (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 576; *see also Davis*, 203 S.W.3d at 852 (citing the same factors). A reviewing court may also consider other relevant factors, including "the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the

element or defensive issue to which it is relevant." *Scott v. State*, 227 S.W.3d 670, 690 (Tex.Crim.App. 2007). The question for the reviewing court is not whether the jury verdict was supported by the evidence, but whether the "constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict--whether, in other words, the error adversely affected 'the integrity of the process leading to the conviction.'" *Id.* at 691. In short, the "reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion[,]" and at the end of our review, we must be able to declare ourselves satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before we can affirm it. *Scott*, 227 S.W.3d at 690-91, *citing* TEX.R.APP.P. 44.2(a); *Chapman*, 386 U.S. at 24; *Davis*, 203 S.W.3d at 852-53.

Conversely, any erroneous admission of Officer Gadra's testimony based on hearsay is governed by the non-constitutional harm standard. Under that standard, a defendant's substantial rights are only affected when the "error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex.Crim.App. 2014). An appellate court should not overturn a criminal conviction for non-constitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex.Crim.App. 2011); *see also Coble v. State*, 330 S.W.3d 253, 280 (Tex.Crim.App. 2010) (recognizing that if improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless). Neither party shoulders a burden to prove or disprove harm, rather we simply make that determination from the record as a whole. *Warner v. State*, 245 S.W.3d 458, 462-64 (Tex.Crim.App. 2008).

### B. The Paradox of the Two Events

As a preliminary matter, we find it necessary to recognize--as both parties do--that based on the charge, the jury could have found Appellant guilty of the lesser included offense if the State proved either the February 26th or the May 12th incidents beyond a reasonable doubt. As explained above, the trial court instructed the jury in the disjunctive that it could find Appellant guilty of the lesser included offense of assault family violence if it found that he had committed either the February incident or the May incident. In addition, the jury charge did not inform the jury of the need to unanimously agree on which of the two incidents Appellant committed in reaching its verdict, and the court did not require the jury to return a special verdict specifying which of the two incidents it relied upon in finding Appellant guilty.[4]

Taking the appellate record and briefing as we find it, we discuss each incident separately to determine if the challenged testimony harmed Appellant's case. Ultimately, we conclude that the error in admitting the challenged evidence pertaining to the February incident did not harm Appellant's case, which is enough to sustain the conviction.

### C. Officer Gadra's Hearsay Answer

Although we have found that one portion of Officer Gadra's testimony constituted inadmissible hearsay, we do not find that its admission was harmful to Appellant's case. Officer Gadra's testimony regarding the means by which Martinez was assaulted was sufficiently proven by other competent, unobjected-to evidence admitted at trial. Martinez expressly testified at trial

---

[4] In Texas, a jury must unanimously agree about the occurrence of a single criminal offense in both felony and misdemeanor cases but need not agree on the specific manner and means by which a single offense was committed. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006) (jury unanimity is required in felony cases); *Young v. State*, 341 S.W.3d 417, 423, n.15 (Tex.Crim.App. 2011) (recognizing jury unanimity requirement in misdemeanor cases); *see also Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005) (en banc). To be unanimous, the "jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio v. State*, 353 S.W.3d 766, 771 (Tex.Crim.App. 2011), *quoting Stuhler v. State*, 218 S.W.3d 706, 717 (Tex.Crim.App. 2007). But no issue was raised below, or on appeal about the disjunctive nature of the jury charge here.

that Appellant--whom she identified in court--bit her on her "butt cheek" during their encounter. In addition, the State played a 911 call to the jury, without objection, in which the 911 caller stated that Martinez had informed her that her boyfriend had bitten her, and the State further introduced photographs of her bite mark at trial, again without objection. The improper admission of evidence is not considered harmful to a defendant's case if the same facts are proven by other properly admitted evidence found in the record. *See Smith v. State*, 499 S.W.3d 1, 6 (Tex.Crim.App. 2016); *see also Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App. 1999) (en banc) (holding that any error in the admission of hearsay testimony was harmless in light of other properly admitted evidence proving the same fact); *Huff v. State*, 560 S.W.2d 652, 654 (Tex.Crim.App. [Panel Op.] 1978) (when improperly-admitted hearsay evidence relates to facts that are sufficiently proved by other and competent evidence, the admission of the hearsay evidence does not constitute reversible error).

Accordingly, we conclude that the admission of Officer Gadra's testimony did not harm Appellant's case. Appellant's Issue Five is overruled.

### D. The May 12th Videotaped Statement

Prior to calling Martinez to the stand, the State presented some evidence pertaining to the May 12th incident. The State first provided the testimony of Officer Duran, who recalled that Martinez had walked into the police station to report that she had been assaulted. Officer Duran observed that Martinez had bruising on the outside of her arms, and it appeared that she had been grabbed just about the wrists. He also noted that she had swelling around her eyes, bruising on her lips, and blood on her nose, indicating that she had been struck in the nose area. The State admitted seven photographs that were taken of Martinez at the police station, which depicted bruising on her lips and blood in the nose area. Officer Duran recalled that he conducted the

videotaped statement of Martinez which the State was later able to admit.

Applying the constitutional harm factors for a *Crawford* violation, we conclude the videotaped statement taken on May 12th harmed Appellant's defense of the allegations over the May 12th incident.

### 1. *The importance to the State's case*

The State acknowledges that the May videotape was important to its case, and we agree. The May videotape directly linked Appellant to the assault, and was the key, if not the only piece of evidence that directly linked Appellant to the assault. The State repeatedly referred to the videotapes in its closing argument, emphasizing their importance to the State's case. *See, e.g.*, *United States v. Kizzee*, 877 F.3d 650, 662 (5th Cir. 2017) (recognizing that the "importance of testimony to the prosecution's case can be underscored if it is referenced in closing statements."); *see also United States v. Duron-Caldera*, 737 F.3d 988, 997 (5th Cir. 2013) (finding it significant that the government emphasized the existence of an out-of-court statement in its closing argument in finding that the trial court's error in admitting the evidence in violation of the defendant's Sixth Amendment rights was harmful to the defendant's case). Accordingly, this factor weighs in favor of a finding of harm.

### 2. *Whether the videotape was cumulative of other evidence*

The State acknowledges that the May videotape was not merely cumulative of the other evidence it presented at trial, and once again, we agree. In the May videotape, Martinez provided a detailed account of the events leading up to the assault, as well as the assault itself, and identified Appellant as her assailant. As the State recognizes, unlike the situation with the February incident, Martinez did not provide any testimony with regard to the May assault, and there was no other evidence describing the details of the assault itself, or evidence identifying Appellant as the

perpetrator of the assault. *See McDowell v. State*, No. 02-17-00410-CR, 2018 WL 6215906, at *5 (Tex.App.--Fort Worth Nov. 29, 2018, no pet.) (mem. op., not designated for publication) (finding that improper admission of officer's testimony describing a witness's out-of-court statements could have materially affected the jury's deliberations, where no other witnesses testified to the details of the assault). We therefore find that this factor also weighs in favor of a finding of harm.

### 3. The existence of corroborating or conflicting evidence

The State, however, contends that it presented corroborating evidence of the assault, first pointing to Officer Duran's testimony that Martinez came to the police station to report an assault, and the photographs that were taken at the station showing the injuries to Martinez's face. While Officer Duran's testimony and the photographs confirmed that an assault took place, they did not provide any evidence that Appellant was her assailant. Instead, that evidence came solely from Martinez's recorded statement.[5]

In addition, the State relies on a recording of a 911 call that it introduced into evidence, without objection, in which a caller reported seeing a male and female fighting in a car the same day that Martinez reported the May assault, and that the "lady" was being "beaten" by the male. However, the State failed to directly link the recording to Appellant's case. In particular, although the caller provided a license plate number of the car in question, the State never presented any evidence as to the ownership of the car. Further, while the caller did identify the male assailant as having short black hair, she did not provide any additional description of the male, and she did not appear in court to identify Appellant as the assailant.

---

[5] As set forth above, Martinez did identify Appellant in court when asked by the State if the person who was the "subject of all of our conversation" was in the courtroom. However, at that point, Martinez had been repeatedly invoking her Fifth Amendment rights, and it was unclear exactly what the State was asking or what her response meant.

27

Accordingly, Appellant was harmed if the jury had to rely on the May 12th incident to find him guilty. The record, however, suggests the jury did not place credence on the May 12th events. First, the jury failed to find Appellant guilty of continuous family violence which required two acts of family violence. The non-finding on that charge would suggest the jury discounted at least one of the incidents that the State was advancing. Moreover, the jury failed to find Appellant guilty of the child endangerment charge, which was tied to the May 12th incident. That leaves the February 26th incident as the only charge upon which the record can sustain the conviction.

## E. The February 26th Event

The State proved its case on the February 26 incident through means other than just the videotaped statement. Martinez herself testified to the events of that day, including that Appellant picked her up after her car broke down. The couple argued when Appellant then drove to a friend's house rather than take her home. Appellant also got mad when Martinez attempted to take the children's car seats out of Appellant's car. He bit her as she tried to climb into the back seat, and then stranded her by the side of the road, where she was assisted by a good Samaritan who called 911. The 911 call was played for the jury without objection. In the call, the good Samaritan reported that she and her friend had seen a young female walking down the street crying and carrying a car seat. She reported that when she and her friend came to her assistance, the female reported that she had been involved in an encounter with her boyfriend, who had hit her and bit her before he "kicked" her out of his vehicle. She reported that the female would not stop crying and requested police assistance at the scene.[6]

At trial, Officer Gadra testified that he and his partner were dispatched to the location given by the 911 caller, and met with the caller, who confirmed her report. Officer Gadra testified that

---

[6] The good Samaritan did not testify at trial.

he next met with Martinez and observed that she was crying or had just finished crying and was "sniffling a lot." Officer Gadra testified that he asked Martinez if she would come to the station to tell them what had happened, and she agreed.

At the station, a female officer took photographs of Martinez's injuries. The female officer testified at trial that Martinez appeared upset and was crying at the time she took the photographs. Two of the photographs were admitted at trial, depicting what appear to be puncture wounds; at trial, however, the female officer could not recall what part of the body she photographed and could not say with certainty whether the photographs depicted bite marks or some other form of injury. Officer Gadra, however, testified that he believed the injuries depicted on the photographs were "consistent" with Martinez's story. Officer Gadra testified that after the female officer finished photographing Martinez's injuries, he conducted the videotaped interview of Martinez.

Officer Gadra testified that based on Martinez's videotaped statement and the photographs taken by the female officer, he concluded that there was enough probable cause to issue a warrant for Appellant's arrest. Officer Gadra, however, recalled that he did not conduct any follow-up investigation regarding the incident, and never interviewed Appellant, although his partner did try to contact him. Applying the constitutional harm factors for a *Crawford* violation, we conclude the admission of the videotaped statement taken on February 26th did not harm Appellant's defense of the allegations over the February 26th incident.

### 1. The importance of the February videotape to the State's case

The State acknowledges that the February videotape was important to its "overall theory of the case because it allowed the jury to see Martinez's frightened demeanor when she gave her statement to the police on the day of her [February] assault." The State argues, however, that in

29

the context of establishing that Appellant assaulted Martinez, the videotape was not particularly important, as the State had other "direct evidence" of the assault, pointing to Martinez's trial testimony, the 911 call, and the photographs of her injuries. This factor weighs somewhat towards harm, because the videotaped statement was more detailed than the trial testimony, and likely more emotional. *See Matter of P.M.*, 543 S.W.3d 365, 382 (Tex.App.--El Paso 2018, no pet.) ("[t]he State's outcry evidence presented through [a trial witness] was vital because it presented details about the nature and extent of the offensive exposure and contact that were not presented through the testimonies of . . . other witnesses."). And given Martinez's less than forthcoming testimony at trial, the videotape became the State's best evidence of Appellant's guilt, and strengthened the State's case, given its direct bearing on his guilt. *Cf. Almaguer v. State*, 492 S.W.3d 338, 359 (Tex.App.--Corpus Christi 2014, pet. ref'd) (out-of-court statements and drawings were arguably important to the State's case because it provided the State with a direct eyewitness to the defendant's role or participation in the victim's death, and "strengthened" the State's case) *with Wood v. State*, 299 S.W.3d 200, 215 (Tex.App.--Austin 2009, pet. ref'd) (where out-of-court statements had no direct bearing on the defendant's guilt, they were of little importance to the State's case); *Abarca v. State*, No. 08-19-00038-CR, 2021 WL 268154, at *17-18 (Tex.App.—El Paso Jan. 27, 2021, no pet.) (not designated for publication) (where State had other direct evidence connecting defendant to the offense, the admission of declarant's out-of-court statement that, at best, indirectly linked him to the offense, had little importance to the State's case).

In addition, as Appellant also points out, the State made at least six references to Martinez's videotaped statements in its closing argument, encouraging the jurors to watch the videos during their deliberations, and suggesting that the jury should consider the videotapes in reaching its verdict. Such repeated references to the videotapes clearly indicate that the State considered them

to be important to its case. *See, e.g.*, *Kizzee*, 877 F.3d at 662. Accordingly, we conclude that this factor weighs in favor of a finding of harm.

### 2. *The cumulative nature of the videotape and the other trial evidence*

We consider the next two factors together, i.e., whether the challenged evidence was cumulative of other evidence presented at trial, and whether the record contains corroborating or contradicting evidence. As the State points out, it presented ample evidence at trial to establish the same salient facts that were contained in Martinez's videotaped statement. Most importantly, before Martinez invoked the Fifth Amendment, she testified at trial that she was in a romantic relationship with Appellant, that the two were engaged in a struggle in Appellant's vehicle during the February incident, and that he bit her "butt cheek" as she tried to exit the vehicle. These same facts were confirmed in the 911 recording that was played for the jury without objection, in which the caller recounted that Martinez had informed her that she had been bitten by her boyfriend during a struggle in his vehicle. And, as the State also points out, her injuries were corroborated by the admission of the unobjected-to photographs that were admitted at trial.

Although Martinez's trial testimony adds a new fact--that she played an active role in the struggle that led up to the assault--she was nevertheless consistent in recalling the actual details of the assault itself, i.e., that Appellant bit her on the buttocks. And in fact, we have found nothing in the record that contradicts this key fact.[7] Accordingly, we find that these two factors weigh in favor of a finding that the error in admitting the February videotape did not harm Appellant's case. *See*, *e.g.*, *Sanders v. State*, 422 S.W.3d 809, 818 (Tex.App.--Fort Worth 2014, pet. ref'd) (court

---

[7] Appellant contends that the photographs of her injuries do not in fact depict a bite mark, and he appears to suggest that this contradicts Martinez's story. As set forth above, however, Officer Gadra testified at trial, without objection, that he believed the photographs were consistent with Martinez's story, and Appellant presented no testimony to contradict Officer Gadra's opinion.

31

concluded that any error in admitting an out-of-court recording from a witness who was unavailable for trial did not harm defendant's case given the other uncontroverted and unobjected-to evidence presented at trial establishing that the defendant assaulted his victim).

### 3. *The overall strength of the State's case and other factors*

For the same reasons set forth above, we conclude that even without the admission of Martinez's videotaped statement the State had a strong case against Appellant with regard to the February 26th incident. Moreover, as the State points out, the admission of the videotaped recording in some respects actually weakened its case, given the fact that Martinez provided a different version of the facts leading up to the assault in her recorded statement than she gave during her trial testimony, which in turn weakened her credibility as a witness. And, as the State points out, Appellant's primary defensive theory--from his opening statement to his closing argument--was that Martinez was not a credible witness, and that she was not being truthful about either of the assaults. In fact, during closing arguments, in assailing Martinez's credibility, Appellant's attorney pointed out to the jury that Martinez's trial testimony differed from her videotaped statement and questioned whether she was lying on the video or whether she was lying at trial.

Accordingly, although we recognize that Martinez's videotaped statement was of some importance to the State's case, the remaining factors in our analysis convince us that its admission would have had, at most, a slight effect on the jury's verdict, and we are therefore satisfied, to a level of confidence beyond a reasonable doubt that the error in admitting the February videotape did not contribute to Appellant's conviction. *See Scott*, 227 S.W.3d at 69-91.

## VI. CONCLUSION

We overrule Appellant's Issue Six based on the lack of proper objection. We overrule

Issue Five in part based on the merits, but as to that testimony that may have been erroneously admitted, we find any error to be harmless. Tᴇx.R.Aᴘᴘ.P. 44.2(b). We overrule Issues One, Two, Three and Four for the reasons stated above, and affirm the conviction.

JEFF ALLEY, Justice

May 28, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)